Stagg *v.* Jackson.

---

STAGG, executor, &c. *vs.* JACKSON and wife.

The surrogate, in whose office a will is proved, has jurisdiction to call an executor to account for the proceeds of real estate sold by such executor, under a power contained in the will, and for the rents and profits of such real estate received by him, previous to the sale thereof, under and by virtue of a power in the will of the testator.

Where a will directs real and personal estate to be sold by the executors, and makes but one fund of the real and personal property of the testator, for the purposes of the will, neither the executors, nor the estate, should be subjected to the expense of taking two accounts of the same fund, or of different parts thereof; one before the surrogate, and the other in the court of chancery.

In such a case, the provisions of the revised statutes are sufficiently broad to authorize the surrogate to take jurisdiction of the whole matter, and to compel an account by the executors, both as to the personal estate, and the rents and proceeds of the sale of the real estate of the testator, and to decree the payment, to the residuary legatees, of their respective shares.

A contingent limitation over, to other persons, of the capital of shares given to minor children on their arriving respectively at the age of twenty-one, in case the minors presumptively entitled to the same shall die under age, without leaving issue, forms no objection to the jurisdiction of the surrogate to decree an account and

Stagg v. Jackson.

settlement of the estate, upon the application of a legatee, and to direct the immediate payment of the share of such legatee, who has become absolutely entitled to the same.

The fact that the shares of minors are held by the executors, in trust, until they shall respectively become of age, only suspends the power of the surrogate to decree a distribution and payment of those shares of the estate, to the legatees, until such minors shall respectively arrive at the age of twenty-one, or die.

The court of chancery being authorized by statute, upon the affirmance of a decree of a surrogate, to award damages to the respondent for the delay and vexation caused by the appeal, it is proper that such damages should be awarded to the respondent in all cases, where he has been delayed by the appeal, and where it is evident that damages have been sustained in consequence thereof.

Where the appeal is from a final decree directing the payment of money, interest on the amount decreed to be paid, during the time the collection of the money has been suspended by the appeal, is the proper measure of damages to be awarded to the respondent.

THIS was an appeal, by the executor of the last will and testament of A. Stagg deceased, from the sentence or decree of the late surrogate of the city and county of New-York. By the will of the testator, who died in 1835, he devised and bequeathed all his estate, real and personal, to his executors, in trust to sell the same, and until such sale, to receive the rents, profits and income thereof, for the purposes of his will, and upon the following trusts : *First.* To invest the proceeds of the real and personal estate, and to pay out of the same $50 a year for the education and support of his daughter Helena, until she should attain the age of fifteen years, over and above her distributive share of the estate, and the like sum for the education and support of his son Junius Theodore, until he should attain the same age, over and above his distributive share of the estate and the income thereof. *Secondly.* To divide the trust fund and the income thereof, subject to those charges thereon, into nine equal parts, and to pay over and convey one part thereof to his daughter Anna Matilda Earl and her heirs, one equal part to his daughter Mary Elizabeth and her heirs, and one equal part to John T., the appellant, and his heirs ; to hold one other part thereof in trust for his daughter Hannah Augusta Gautier ; and to hold the remaining five parts thereof in equal shares for his other five children who were then minors,

· as in the next clause of his will mentioned. *Thirdly.* To hold the shares of such minor children respectively until they should arrive at lawful age, and then to pay over the same to them or their heirs or assigns; and during the minority of each to pay so much of the income of his or her share, for his or her support and education, as the executors should think proper. And he directed that if either of his said minor children should die under age, and without leaving lawful issue, his or her share should then go to, and be divided among the testator's surviving children, and the issue of such of his children as should have died leaving children.

The appellant took upon himself the burthen of the execution of the will, and received the rents and profits of the real estate until he sold the land, and then received the proceeds of such sale. In 1843, the testator's daughter Mary Elizabeth, who had then intermarried with James Jackson, joined with her husband in a petition to the surrogate, praying that the executor might be compelled to account, and also to pay over to her and to the other parties interested in the estate of the decedent, their respective shares thereof. Upon the return of the citation, the executor rendered an account of the personal estate only; showing a balance in his hands of about $3000. The petitioners objected to various items in the account of the personal estate, and also that the executor had not charged himself with interest upon the moneys remaining in his hands from time to time. They also alleged, that at the time of the death of the testator, he was seised of real estate, which the executor had since sold under the power contained in the will, and that until the time of such sale, the executor received the rents of the said real estate; but that neither the proceeds of such sales, nor the rents and profits of the real estate previous to such sale, had been accounted for by him. The executor insisted upon the correctness of his account as to the personal estate of the decedent; and he denied the jurisdiction of the surrogate to call him to an account for the rents and profits, or the proceeds of the sales, of the real estate. He therefore demurred to that part of the claim of the petitioners.

The surrogate, after hearing the case argued by the advocates of the parties, pronounced a sentence, or decree, overruling the demurrer of the executor, and directing that the executor proceed with the further accounting in relation to the estate of the decedent; that he produce the vouchers for the debts and credits in his account theretofore rendered, and exhibiting the particulars thereof; that he also account for the rents and profits of the real estate of which the testator died seised, as well as for the proceeds of the real estate, received by him upon the sale thereof; and that he file his account, duly verified, with the vouchers, in the office of the surrogate, on or before the 15th of December, 1843, and submit himself to examination on oath as to the payments made by him, and as to any property or effects of the decedent which had come to his hands, and as to the disposition thereof; or in default of compliance with such sentence and decree, that an attachment issue against such executor. And the question as to the liability of the executor for interest was reserved until such further accounting was had.

The executor thereupon appealed from the whole of such sentence and decree, except the part thereof which related to the personal estate of the decedent which was proper to be included in the inventory of personal estate.

*S. Miller,* for appellant. The surrogate had no power to make such an order as is appealed from. The statute confines him, in decreeing distribution, to the personal estate of the testator contained in the inventory, except where a legacy or debt is ordered to be paid from the sales of real estate. Such legacy must be certain, to give him jurisdiction, and not contingent. He has no power other than what the statute expressly gives him. (2 *R. S.* 109, § 57. 6 *Cowen,* 221. 1 *Hill,* 130. 2 *Wend.* 689.) By his will, the testator devises his real estate on certain trusts and limitations; and the effect is to render such devises uncertain, and the amount of interest neither a specific legacy nor a legacy of any kind; but the whole is a

Stagg v. Jackson.

trust, over which the surrogate has no control, and the same must be adjudicated by a court of equity.

*L. B. Woodruff*, for respondent. By the provisions of this will the entire property of the testator, real and personal, was blended in one common fund; real estate to be converted into money, and the whole, together with the income thereof, applied to the payment of debts and legacies, and to be divided among his children. This amounted to a conversion of the real estate into personalty, at the death of the testator, upon the doctrine of equitable conversion. (*Ram on Assets*, 139, [205,] *and cases cited.*) Where a will creates a trust to sell real estate, and the testator's object is to cause a conversion, for the purposes of the will, a legacy which was void under the statute of George, passed to the residuary legatee of personalty. So as to lapsed legacies. (*See 2 Pow. on Devises*, p. 60, *and onward; Leigh & Dalzel on Eq. Conv. 5 Law Lib. 1st series; Marsh* v. *Wheeler*, 2 *Edw. Ch. Rep.* 157; *Lorillard* v. *Coster*, 5 *Paige*, 218; *Bunce* v. *Vander Grift*, 8 *Id.* 37.) It is a general principle that money directed to be employed in the purchase of land, or land directed to be sold and converted into money, is, for all the purposes of the will, considered as that species of property into which it is to be converted. This would be true, even if there had been no devise of the legal estate, but only a power to sell and lease, and to pay debts and legacies, &c. (*See cases cited above.*) In accordance with the above principles, which apply in equity to the whole estate before it is actually converted into money, the rents and profits, when collected, and the proceeds of sales actually made, are legal assets in the hands of the executor. And so the vice chancellor of the first circuit expressly decided, in the case of this appellant, (*Stagg, ex'r,* v. *Celle and others*,) in reference to this identical will and the estate held under it, adjudging it, after actual conversion, to be personal estate, to be distributed according to the statute of distributions. The powers conferred by the will appertain to John T. Stagg in his representative character—i. e. as executor. Devise to executor for payment of debts, and

until debts are paid, gives a chattel interest which goes to the executor as executor ; and this is so even if a power only was given to the executor, the freehold meantime descending to the heir. When sold, the assets would be held by the executor as executor. And upon the principle that whatever goes to the executor as executor is legal assets, the proceeds are in both cases deemed legal assets in his hands. (1 *Atk.* 484. 1 *P. Wms.* 430. *Hard,* 405. 1 *Vern.* 63. 2 *Id.* 106, 248, 405. *Prec. Ch.* 127, 136.)

Real estate once converted into money by an executor, pursuant to the direction of the will, for the payment of debts, legacies, and distribution, is not only legal and personal assets in his hands, but is to be accounted for before the surrogate. The statute is explicit in regard to proceeds of sales. (2 *R. S. p.* 49, [109, 10,] §§ 55, 57.) There is no foundation for any distinction between the rents collected before the sale, and the moneys received on the sale. The whole are the result of the conversion contemplated by the will. And upon the above principle the rents (as much as the proceeds of sale,) are, when collected, legal and personal assets. And if so, the surrogate has, unquestionably, jurisdiction to compel an account. (*See Bogert* v. *Hertell,* 4 *Hill,* 192.) His accounting therefore must be as executor. (*See Toller on Ex'rs,* 413 *and onward.*)

*S. Miller,* in reply. In order to give the surrogate jurisdiction, in this case, it was incumbent on the respondents to show, that by the will of the testator a sale of real estate was ordered to be made, either for the payment of debts or legacies. And even if such a state of facts were shown, the power of the surrogate extended only to compel the executor to account for the proceeds of sales, and to compel distribution thereof; and he had no right to compel him to account for the rents and profits of the real estate of which the testator died seised. In no view of the case can this portion of the decree be sustained. Was it then shown, in the present case, that by the will in question a sale of real estate was ordered to be made, either for the payment of debts or legacies, or more properly

Stagg *v.* Jackson.

speaking, for the payment of legacies; for it is this branch of the surrogate's jurisdiction which the respondents in the present case have invoked.

None of the provisions of the will order the real estate to be sold for the payment of a legacy to the respondents. The relation in which the parties stand is that of trustee and cestui que trust, and not that of executor and legatee. The will gives the executor authority, in the exercise of his discretion, to sell or lease the whole or part of the real estate; but no where orders him to do it. It constitutes and treats him throughout as a trustee. Nor do the cases referred to by the counsel for the respondents, establish the principle, that real estate, when converted into money, becomes equitable personal assets, and will, in a court of equity, be treated as such. The parties are not contending in a court of equity, whose powers are co-extensive with the whole trusts created by the will, and whose decree can discharge the trustee from the obligations which they impose; but before a court having a statutory jurisdiction, whose powers are limited to the precise terms of the statute, and whose decree, upon a mere matter of trust, can afford no protection to the executor, or, more properly speaking, the trustee. Nor does the respondent, Mrs. Jackson, stand in the attitude of a legatee of a specific sum to be produced by a sale of the real estate. It depends upon the discretion of the trustee, whether she is to receive her share, either in whole or in part, in the form of a division of the real estate, or in its income from leases, or in money. And though it may turn out that, by the action of the executor, she may be entitled to it, all in money, still, so far as the jurisdiction of the surrogate is concerned—a jurisdiction purely legal, and partaking of none of the characteristics of a court of equity—she is to be regarded not as a legatee, but as a cestui que trust.

Again: By the terms and conditions of the will, the executor is to hold the real estate in trust, &c.; and to receive the rents, issues and profits thereof, for the benefit of the devisees until sold. Now, he so held the real estate, for a number of years before the sale was made, and has received large amounts

Stagg *v.* Jackson.

of rents, as well as the avails of such sales. It will not, nor can it, be contended, that the surrogate can govern or direct the application of these rents, as he has assumed to do by the decree appealed from. He has no power over them ; and it would be useless to divide a part and separate the rents from the amount received from the sales. Such a discrepancy and partial power and settlement will never be countenanced, and is within no fair interpretation of the statute.

The whole question is one of jurisdiction, and the executor would not be protected by the adjudication of a tribunal having no power over the subject in controversy.

The Chancellor. The only question which arises upon this appeal, is whether the surrogate's court had jurisdiction and authority to call this executor to account for the proceeds of the real estate sold by the latter, under the power contained in the will, and for the rents and profits of such real estate received by him before such sale, under and by virtue of the power given to him, as such executor, by the will of the decedent. And upon this question I do not see that there are any reasonable grounds for doubt.

The will in this case directs the real estate to be sold, and makes but one fund of the real and personal property of the testator, for the purposes of the will; and the trust to receive the rents and profits of the real estate, by the executor, until sales of such real estate can be made, is a mere incident to the direction to convert the real estate into personalty for the purposes of the will. There is no reason, therefore, why the executor, or the estate, should be subjected to the expense of taking two accounts of the same fund, or of different parts thereof; one before the surrogate, and the other in the court of chancery. And the provisions of the revised statutes are sufficiently broad to authorize the surrogate to take jurisdiction of the whole matter, so far as the interests of these respondents are concerned, to take the account of the whole estate, both real and personal, which has come to the hands of the appellant as executor, and to decree payment to Mrs. Jackson of the

Stagg v. Jackson.

ninth part of the proceeds of the real and personal estate, to which she is entitled as one of the residuary legatees, and which, by the terms of the will, she is entitled to immediately. The surrogate has power to compel the executor to render an account of his proceedings, upon the application of a person having a demand against the personal estate of the decedent, as a legatee. (2 *R. S.* 92, §§ 52, 55.) He has also jurisdiction, upon the application of a legatee, to decree payment of a legacy. (2 *R. S.* 116, §§ 18, 19, *sub.* 2. *Idem,* 90, §§ 45, 48.) And where, by will, the sale of real property is ordered to be made, either for the payment of debts or legacies, the surrogate in whose office the will was proved, has power to cite the executor to account for the proceeds of such sales, and to compel distribution thereof, and to make all necessary orders and decrees therein, with the like power of enforcing them, as if such proceeds had originally been personal property in the hands of an administrator. (2 *R. S.* 110, § 57, 61.)

In the present case, Mrs. Jackson is a legatee, within the true intent and meaning of these several statutory provisions, not only of one-ninth of the residuary personal estate, but also of one-ninth of the proceeds of the sales of the real estate, and of the rents and profits thereof, which the executor was authorized to receive for the immediate use of some of the residuary legatees, and in trust for some others of them, either generally or temporarily. The executor should therefore have paid the debts, funeral charges, and expenses of administration, out of the estate, and should have set apart a sufficient fund, out of the estate, to purchase the two annuities, of $50 each, for Helena and Junius Theodore, until they respectively arrived at the age of fifteen. He then should have added to the residue of the proceeds of the real and personal estate, including the rents and profits and interest and income thereof, the two advancements of $120, which the testator had made to his daughters Mrs. Earl and Mrs. Gautier, and which by the will was directed to be added to their shares in the distribution. And if the distribution was not made at the expiration of one year after the testator's death, the executor should have charged interest on

such advances from the expiration of the year; so as to make the interest equal among all the residuary legatees. One-ninth of the distributive fund, as thus ascertained, would belong to himself, another ninth he should immediately have paid over to Mrs. Jackson, and another, less the advance of $120 and the interest after the expiration of the year, should have been immediately paid over to Mrs. Earl, and another ninth, less the advancement and interest, he should have kept and invested, in trust for Mrs. Gautier, as directed by the will. The remaining five-ninths of the estate he should have divided into five equal parts, and invested one part for each of the minor children until they attained the age of twenty-one respectively; and he should have accumulated the income thereof for their benefit, if it was not wanted for their education and support.

The contingent limitations over of the capital of these five shares, to the surviving children or their issue, in case the minors presumptively entitled to the same should die under age, without leaving issue, formed no objection to the jurisdiction of the surrogate to decree an account and settlement of the estate, upon the application of the respondents; and to direct the immediate payment of the one-ninth of the residuary estate to which Mrs. Jackson was entitled absolutely. And the fact that the shares of these minors were held by the executor in trust, until they respectively should become of age, only suspended the power of the surrogate to decree a distribution and payment of those portions of the estate, to the legatees, until such minors respectively arrived at the age of twenty-one, or died; when it would be ascertained to whom that part of the capital of the estate belonged. The interest or income of the shares of these minors, beyond what was necessary for their support, belonged to them absolutely, until it could be ascertained to whom the capital of those shares would ultimately belong. For as there can be no valid direction for the accumulation of rents, or income, except for the benefit of a minor in being when the accumulation commences, if either of the minors should die under twenty-one, the accumulation of income which had been made for his use in the meantime, would belong to his next of kin

Stagg *v.* Jackson.

or legatees. For the minor himself, if he should die under age, would be absolutely entitled to such accumulated income at the time of his death, as the person presumptively entitled to the next eventual estate, in the capital of the fund, at the time the income thereof accrued. (1 *R. S.* 726, § 40. *Idem,* 773, § 2.)

The surrogate was clearly right in the sentence and decree which he made, directing the appellant to account for the rents and profits and proceeds of the real estate, as well as the personal effects of the testator. The decretal order must therefore be affirmed with costs. The statute also authorizes this court, upon the affirmance of the decree of a surrogate, to award damages to the respondent, for the delay and vexation caused by such appeal. (2 *R. S.* 618, §§ 35, 42.) And it is proper that such damages should be awarded to the respondent in all cases, where such respondent has been delayed by the appeal, and where it is evident that damages have been sustained in consequence thereof. Where the appeal is from a final decree awarding the payment of money, the interest on the amount decreed to be paid, during the time the collection of the money is suspended by the appeal, is the proper rule of damages. But as this appeal suspended the proceedings before the account was taken, the damages which the respondents have sustained, by the appeal, is the interest on the balance which was due to them from the executor at the time the appeal was entered; including in such balance such interest as the appellants were then entitled to, upon their share of the funds in the hands of the executor, from the time when he ought to have paid it over to them, or invested it for their use. The decree of affirmance must therefore direct, that the respondents recover against the appellant the interest on the balance which was due to them, from the executor, for principal and interest, on the 23d of December, 1843, the time of entering the appeal, as their damages for the vexation and delay caused by this appeal. For the purpose of ascertaining, and giving to the respondent such damages, the decree must direct the surrogate to state the account, with a rest on the day upon which such appeal was entered.

And he must charge the executor with interest, from that time, upon the balance which was then due from him, to the respondents, for the principal and interest with which he was then chargeable, for their share of the proceeds of the real and personal estate of the decedent, and of the rents, interest, and income thereof.