Ruggles, C. J.
 

 It seems to be certain, that the testator, Benjamin Hyde, did not intend to devise the land in question, as such, to Benjamin Hyde Old, Joshua Hyde Old, his nephews, and Caroline Old, his niece. They were aliens, at the time the will was made, and at the death of the testator, and incapable, for that reason, of taking the land as devisees. But they were not incapable of taking the proceeds of the land, when sold; he, therefore, directed the land to be sold, and the net proceeds to be divided between the three persons above named. There was no devise of the land to these persons nor to any one else: as devisees, they take the price of the land, but not the land itself.
 

 The principles applicable to a case of this kind are clearly stated by the vice-chancellor, Sir JohN Leach, in the case of
 
 Smith
 
 v.
 
 Claxton
 
 (4 Madd. 492). “ A devisor may give to his devisee either land, or the price of land,
 
 *134
 
 ■at his pleasure, and the devisee must receive it in,the quality in which it is given, and cannot intercept the purpose of the devisor.” “ Where a devisor directs his land to be sold, and the produce divided between A. and R, the obvious purpose of the testator is, that there shall be a sale for the convenience of division; and A. and B. take their several interests as money, and not land. So, if A. dies in the lifetime of the devisor, and the heir stands in his place, the purpose of the devisor, that there shall be a sale for the convenience of division, still applies to the case, and the heir will take the share of it, as A. would have taken it, as money and not land.”
 

 Benjamin Hyde Old, therefore, took no estate in the land, as land, under the will. If he took any estate in the land, by virtue of the first section of the act of 1843 (which enables naturalized citizens, under certain circumstances, to take and *hold lands coming to them by grant, devise or inheritance, while they were aliens), he must have taken it by inheritance, and not by devise; and such inheritance was liable to be defeated by a sale under the power contained in the will, if any such valid power existed.
 

 The doubtful question, if any there be in the case, is, whether power was given by the will to the executors to sell the land for the purpose of distributing the proceeds among the testator’s nephews and niece. The testator devised to his wife the rents of his four houses, during her natural life, and his household furniture, plate, &c., and proceeds, “ after her death, the house and lot, the corner of Amity and Greene streets, to be sold, and the net proceeds to be equally divided between Benjamin Hyde Old, Joshua Hyde Old, and their sister, Caroline Old, share and share alike.” The testator appointed for his executors and executrix, Benjamin Hyde Old, Joshua Hyde Old, Benjamin Hyde Meakings and Jane Parks Meakings. The executors are not, by express words, made the donees of the power, and it is, therefore, con
 
 *135
 
 tended on the part of the plaintiff, that the power of sale devolves on the court of chancery, according to § 101 of the statute “ of powers,” which is as follows: “ Where a power in trust is created by will, and the testator has omitted to
 
 designate
 
 by whom the power is to be exercised, its execution shall devolve on the court of chancery.” But this section does not require that the designation should be by express words; a designation by necessary implication excludes the case from the operation of the statute; such a designation is equivalent to a designation by express words. The question, therefore, is, whether, at common law, when the will was made, the executors had the power, by implication, to sell the land in controversy.
 

 It is conceded, that where a testator directs his lands to be sold for the payment of his debts, or for the payment of legacies, and appoints executors, the executors have the power to *sell, although they are not named as the donees of the power, otherwise than by naming them as executors. The reason given for this is, that it belongs to the executor to pay the debts and legacies; and the testator having directed that to be done, by means of a sale of his land, the executor should have the power to sell, as incident to the accomplishment of the testator’s main purpose. But it is denied, that the executor has a power, by implication, to sell, in a case in which the proceeds of the sale are to be distributed among his kindred or other objects of his bounty; and that the reason above mentioned does not apply to such a case, because the distribution is not to be made by the executor, in the course of his duty as such, and in his character as executor.
 

 But this seems to be an erroneous assumption. By the settled doctrine of equitable conversion, the testator gives money and not land to his nephews and niece, and the gift is, for all substantial purposes, a legacy. It was so regarded in the case in 2 Leon. 220, which so far as it
 
 *136
 
 is applicable to the point under consideration, is as follows : “A man devised his lands to his wife for life, and further willed that if he should not have issue by his wife, that then, after the death of his wife, the lands should be sold, and the money thereof coming distributed to three of his blood, and made his wife and another his executors, and died. The executors proved the will; one of the executors died, and the other sold the lands. It was adjudged, that the sale was good, although it be not expressed in the will by whom the lands should be sold,
 
 for the moneys coming of the sale are to he distributed by the executors as legacies ;
 
 and it appertains to executors to pay the legacies, and, therefore, they shall sell.”
 

 The authority of this case was questioned on the argument, and supposed to be overruled by the decision in
 
 Bentham
 
 v.
 
 Wiltshire
 
 (4 Madd. 44); but the doctrine in that case has in its turn been doubted. There is, moreover, a manifest difference between that case and the present.
 

 ^11 CaSe’ *^es^or ¿hooted the estate to be sold (not saying by whom), and the moneys to be distributed; and the question was, whether the heir should join with the executors in executing the conveyances. It was held, that the executors had not the power of making the sale, without the concurrence of the heir, to whom the legal estate had descended. But in the present case, there was no heir to whom the legal estate could descend at the death of the testator; the persons who would otherwise have inherited were aliens, and the lands escheated. It cannot be supposed, that the testator expected that the sale would be made by the state, under the direction given by the will. The testator's intention was, to protect the title of the land against the state, by a sale and distribution, and this could be done only by the executors.
 

 In
 
 Patton
 
 v.
 
 Randall
 
 (1 Jacob & Walker 189), the estate was devised to the children of the testator, and on that ground, it was held, that a power to the executors could
 
 *137
 
 not be raised by implication. In
 
 Tylden
 
 v.
 
 Hyde
 
 (2 Sim.
 
 &
 
 Stuart 238), the testator directed his real and personal estate to be sold, and the proceeds to be distributed, without saying by whom, and it was decided, that a power to sell was therefore implied to the executors. In
 
 Denne
 
 v.
 
 Judge
 
 (11 East 288), the land was devised to five persons as trustees, to sell and apply the money to certain uses, and the same persons were afterwards appointed executors, and the executors
 
 as such
 
 had nothing to do with the land. It may, perhaps, be difficult to reconcile the English cases with each other, in relation to the point in question; but it is not necessary to - do so. The American cases, and those in our own courts, seem to be decisive, to establish a power of sale, by implication, in the executor, in a case like the present.
 

 In
 
 Lloyd’s Lessee
 
 v.
 
 Taylor
 
 (2 Dallas 223), the question arose upon a devise, that after the death of the testator’s wife, certain lands should be sold and the money divided among children; but the will did not declare by whom the sale ^'should be made. The land was sold, * however, by the survivor of two executors, and it was submitted for the opinion of the court, whether that sale was good. The court adjudged it good, and declared it a plain case. In
 
 Craig
 
 v.
 
 Leslie
 
 (3 Wheat. 563), the proceeds of real estate sold under a power contained in the will of Robert Craig, were regarded as a bequest of personal estate, and a
 
 legacy.
 

 In
 
 Bogert
 
 v.
 
 Hertell
 
 (4 Hill 492), land had been sold by the executors, under a power contained in the will of ’ John Dover, to be divided among certain persons named in the will. The executors took a bond and mortgage to themselves, as executors; one of them, afterwards, sold and assigned the bond and mortgagé to Bogert, for its full value, and misapplied the money; the question was, whether Bogert acquired a title to the bond. If the executors held it in the character of trustees, one had no right to assign it, without the concurrence of the other ;
 
 *138
 
 but if it belonged to them as executors, the assignment by one was valid. The vice-chancellor and the chancellor were of opinion, that they held the. bond as trustees, and not as executors, and that Bogert’s. title was therefore bad; but the court for the correction of errors reversed the decree; and Chief Justice Nelsor, in an able opinion, after reviewing the cases, declared, that the fund arising from the sale of the real estate was to be regarded, „to all intents and purposes, as personal estate in the hands of the executors, to be distributed as money, and no part as land, or as partaking of the nature and character of real estate. In the course of his opinion, he declares, that “it has been settled law, since the Year Books, that a power given in a will to sell land for the purpose of paying debts or legacies, ór for making division of the produce, without naming the donee, will vest in the executor, by implication. This is deemed fairly inferrible from the fact, that the fund is to be distributed by him, no contrary intention appearing in the will.” Senator Bocees concurred in opinion with Chief Justice *NelsoN, that the fund was assets in the hands of the executors, distributable by them as such, and not as trustees; and the decree in the courts below was reversed by a vote of 18 to 2. This doctrine puts the present case on the same footing as if it were a sale for the payment of debts, in which case it is admitted, that the executrix would have the power of sale by implication.
 

 In
 
 Stagg
 
 v.
 
 Jackson
 
 (2 Barb. Ch. 86), the persons entitled to distributive shares of the proceeds of real estate, sold by an executor under a power contained in a will, are declared to be
 
 legatees,
 
 within the meaning of the statutory provisions authorizing the surrogate to require the executor, as such, to account for the funds arising from the sale. This is upon the ground that the proceeds of the sale are to be regarded as personal estate, to all intents and purposes, unless there be a failure of the pur
 
 *139
 
 pose and object of the sale; there is no such failure in the present case. Benjamin Hyde Old died in the lifetime of the testator; hut his brother and sister became entitled, by lapse, to his share of the proceeds, and this share is not land, hut personal estate. The purpose of the sale, for the convenience of division and to enable the aliens to take, still continued. (4 Madd. 261.) The chancellor’s decision in the case of
 
 Stagg
 
 v.
 
 Jackson
 
 was affirmed in the court of appeals, and the respondent, Mary Elizabeth Jackson, was declared to be the legatee of one-ninth part of the proceeds of the real estate sold by the executor. These decisions bring the present case within the acknowledged principle, that a power of sale is to be implied to the executors, because the fund raised is distributable by them in that character.
 

 It was further contended on the argument, that if the executors had the power of selling'the lands, it has not been well executed, because, on the face of the deed, the consideration was nominal, and no proof was made that the land was fairly sold for its value. But on looking into the bill of exceptions, it appears, that the only points made at the trial were, *first, that the executrix, Jane Barks Meakings, had not the power, by implication, to make the sale; and secondly, that the power was not well executed, because the other executors did not join with her in its execution.
 
 [1]
 
 The latter point was not insisted on before this court. The judgment of the court below should be affirmed, with costs.
 

 Judgment affirmed.
 

 [1]
 

 See the cases, on this point, collected in Bright. Dig. 16G,
 
 \
 
 526.