KINGS COUNTY.—HON. W. L. LIVINGSTON, SURROGATE.—
February, 1882.

## INGREM v. MACKEY.

*In the matter of the judicial settlement of the account of* WILLIAM MACKEY, *executor, etc., of* JAMES IN-GREM, *deceased.*

The testator, by his will, gave all his personal, and part of his real property to his wife, and directed the executor, as soon as practicable, and in his reasonable judgment proper, after the death, but within a year, at most, to sell the residue of the real property, and dispose of the proceeds of sale among legatees named. The executor collected rents, and sold the real property, but not until after the year, and, on his accounting, claimed that he was not bound to include the rents so collected, being answerable therefor to the heirs and not to the legatees. *Held,*

1. That the power of sale, given to the executor, was an imperative power in trust, which, notwithstanding the discretion given, effected an equitable conversion of the real into personal property, from the testator's death.

2. That the rents, as well as the proceeds of sale, became assets in his hands, and he was accountable therefor, in his capacity as executor, to the legatees, in the Surrogate's court.

Exceptions to a referee's report, on an accounting, to answer any useful purpose, must specifically point out the errors complained of, where the latter do not appear from a mere denial of the correctness of the finding.

MOTION to confirm referee's report, on the judicial settlement of executor's account, had at the instance of Salome Ingrem, a legatee under the will.

The facts appear sufficiently in the opinion.

D. P. BARNARD, *for executor*.

CHAS. A. JACKSON, *for Salome Ingrem, petitioner*.

THE SURROGATE.—The principal question, to. be decided on this motion, is whether the executor should account for the rents of the real estate collected by him.

The will gave all the personal property to the widow, and also part of the real estate ; it then directed the executors, as soon after the decease of the testator as practicable, and as should be proper in their reasonable judgment, and which time should be, at most, within a year after the death of the testator, to sell and dispose of all the rest, residue and remainder of the real estate, for the best prices they could obtain, and to dispose of the proceeds of sale among certain legatees therein named.

The executor took charge of the real estate ordered to be sold, soon after letters testamentary were issued to him, and collected the rents thereof. He sold the real estate ; but, as he had allowed the year to expire, during which he was to exercise the power of sale under the will, the purchaser refused to take the title until the defect had been cured by certain proceedings had in the supreme court, when the sale was completed. The executor entered the rents collected by him, in his account as executor ; but subsequently filed with the auditor a protest against being charged with them, claiming that, as

executor, he had no right to collect them, and was accountable for them to the heirs, some of whom were not legatees under the will. The auditor took this view of the law, and stated the account, leaving out the rents collected, and the payments made for repairs to the real estate.

The power of sale to the executor was an imperative power in trust, and it had the effect of working an equitable conversion, of the real estate to be sold, into personal property, upon the death of the testator, notwithstanding the discretion given to the executor to exercise the power at any time within a year afterwards ; it stamped the quality of personalty upon the real estate, and subjected it to the laws governing personal property (Betts *v.* Betts, 4 *Abb. N. C.*, 317, 386, 387, 417 ; *Leigh & Dalzell on Eq. Conv.*, 48 ; Smith *v.* Kearney, 2 *Barb. Ch.*, 533, 538 ; Arnold *v.* Gilbert, 5 *Barb.*, 190, 197 ; Stagg *v.* Jackson, 2 *Barb. Ch.*, 86 ; affi'd 1 *N. Y.*, 206 ; Horton *v.* McCoy, 47 *Id.*, 21 ; Moncrief *v.* Ross, 50 *Id.*, 431 ; Ross *v.* Roberts, 2 *Hun*, 90 ; Graham *v.* Livingston, 7 *Id.*, 11).

It is not denied that the proceeds of the sale of the real estate are assets in the hands of the executor, to be accounted for in this court, but it is claimed, on behalf of the executor, that such is not the case with regard to the rents arising from said real estate, and that they belong to the testator's heirs at law.

When it is considered that equitable conversion is " that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real, and transmissible and descendible as such" (*Leigh & Dalzell on Eq. Conv.*, 2), it is

difficult to understand that the profits should not be affected by the change in the nature of the property from which they arise ; and the authorities show that, unless the will otherwise provides, the rents arising from real estate, after the time when it was ordered to be sold and converted into personal property, are to be considered and treated as the profits from the fund into which the real estate was ordered to be converted.

Thus, in *Leigh & Dalzell, supra*, at page 48, it is said : "When land is once impressed by will with the character of personalty, the person entitled to the interest of the fund arising from the produce will likewise be entitled, until sale, to the rents and profits, which will not therefore go to the heir ;" and Casamajor *v.* Strode (in note to 19 *Vesey*, 390) is cited as holding that, where the testator devised real estate to trustees, upon trust to sell and dispose of the same, as soon as conveniently after his death, by public or private sale, and to stand possessed of the proceeds on certain trusts for several persons respectively for life, and after their respective deceases for their children, the devisees for life named in the will were entitled to the rents and profits of the real estate thereby devised, from the death of the testator.

In Stagg *v.* Jackson (2 *Barb. Ch.*, 86), the testator, by his will, had devised and bequeathed all his estate, real and personal, to his executors, in trust to sell the same, and until such sale to receive the rents, profits and income thereof, for the purpose of division and distribution among the objects of his bounty. The executor received the rents and profits of the real estate, until he sold the land, and then received the proceeds of such sale. On.

being called to account before the Surrogate, the executor tendered an account of the personal property *only*, and denied the jurisdiction of the Surrogate to call him to an account for the rents and profits, or the proceeds of the sales of the real estate ; the Surrogate ordered the executor to account for the rents and profits, as well as for the proceeds of the sales of the real estate. The executor appealed, and the Surrogate's order was affirmed by the chancellor, and sustained by the court of appeals, on appeal from the chancellor's decree (1 *N. Y.*, 206).

In Moncrief *v.* Ross (50 *N. Y.*, 431), the will gave the net income of the real estate to the mother of deceased, during her life. The seventh clause directed the executor, upon her death, to sell the real estate; and the eighth and ninth clauses gave the proceeds of sale to the testator's two sisters. The mother of the testator died before him, and the only heirs of the deceased were his two sisters and a brother. The action was brought by the brother to compel the executor to account for the rents of the estate collected by him, and to pay to him one-third thereof. The court say : "Any income derived from the real estate before the sale has been made, in equity clearly belongs to these sisters, and not to the plaintiff. This was the intention of the testator, apparent from the will."

In Shumway *v.* Harmon (6 *S. C.* [*T. & C.*], 626), the testator directed that his son should work the testator's farm in Phelps, as he was then doing, on shares, for the term of one and a half years after testator's decease, and that, at the expiration of that time, his said farm and personal property should be sold by his executors, and

the amount received upon said sale divided among his children in the manner specified.

The court say : "At the time the power of sale thus became operative, the conversion took place in law, and took with it all the incidents of the said property, all rents and profits, as part of the trust fund to be distributed ;" citing Moncrief v. Ross, and Stagg v. Jackson, *supra* (see also *Redf. Prac.* [2 ed.], 440).

It follows, from these authorities, that the rents collected by the executor in the principal case became assets in his hands, as well as the proceeds of the sale of the real estate, and that he must account for them. .

The second and third exceptions are overruled. If they were intended as objections to any item of disbursement allowed by the auditor, they should have been specific enough to call the court's attention to the objectionable item. Excepting to the auditor's report is not a mere matter of form (Boughton·v. Flint, 74 *N. Y.*, on p. 485) ; and, if the exceptions are to answer any useful purpose, it is clear that they ought to be at least specific enough to point out the error complained of, where it does not appear, from a mere denial of the correctness of the auditor's finding (Newell v. Doty, 33 *N. Y.*, 83; Levy's Accounting, 1 *Abb. N. C.*, 177 ; Estate of Skillen, MS. in this court).

Ordered accordingly.