VALENTINE *vs.* VALENTINE and others.

The petition of appeal, upon an appeal from a surrogate's decree, should name all the persons intended to be made respondents, and should pray that they may answer such petition.

After parties have voluntarily appeared and answered a petition of appeal, they cannot object that the petition is informal as to them.

Persons against whom no proceedings have been had in the appellate court, upon an appeal from a surrogate, and who have neither appeared nor answered the petition of appeal, are not to be considered as parties to the appeal.

A party seeking to open a settled account, in a proceeding before a surrogate for an account, should be able to show such a case as would have enabled him to file a bill in equity to surcharge and falsify such account.

At common law it was not necessary that a submission to arbitrators should be in writing; except where the controversy related to land, or to some matter in respect to which it was incompetent for parties to make a valid and binding agreement by parol. And where a submission is verbal, without any provision therein that the award shall be in writing, a verbal award is valid, at common law.

Where a matter is submitted to arbitrators, it is not necessary that there should be any express agreement to abide by the award when made. The law implies such an agreement, from the very fact of the submission.

The allowance of commissions, to executors, should be computed upon the aggregate sums received and paid out by all the executors collectively, and not upon the amount received and disbursed by each individual; so that five per cent only shall be charged upon the first $1000 of the whole estate, and two and a half per cent upon the next $5000, &c. And the whole commissions should be apportioned among all the executors, equally; or upon some equitable principle, in reference to their respective services in the administration of the estate.

Where a trust, held by an executor, is inseparable from the executorship, he is not entitled to double commissions, first in his character of executor, and again in his character of trustee.

THIS case came before the chancellor upon an appeal, by Elijah Valentine, one of the executors, from the sentence and

decree of the late surrogate of the county of Westchester, upon the final settlement of the accounts of the executors of John Valentine, deceased.   The will of the testator was not set forth in the surrogate's return ; which return showed a very irregular and imperfect state of proceedings before the former surrogate who made the decree appealed from.   But from the petition, upon which the appellant was originally cited to render his account, and from other proceedings in the case, it appeared that the testator died in November, 1820, leaving personal estate, which was inventoried at about $16,000, and a large real estate which his executors were authorized to sell.   By his will, after disposing of a part of his estate in general legacies, &c., the testator directed the residue to be divided between three of his sons, Elijah, the appellant, and Frederick and William, two of the respondents.   William was then a lunatic, and has continued to be such ever since.   And in reference to his share of the estate, the testator directed the executors to invest it at interest upon good security, and to apply the income thereof to the support of William for life, and after his decease, to pay the principal to his children in equal shares.   The will also contained a provision that if William should be restored to his reason, so as to be capable of managing his affairs, then the whole of that third of the residuary estate should be paid over to him, by the executors, to be disposed of by him, as he should think fit.   But he had been twenty years a lunatic at the time of the institution of the proceedings before the surrogate, and there was no probability that he would ever be restored to his reason, so as to entitle him to any part of the capital of the estate under the provisions of the will.   And the appellant, who had received most of the funds of the estate, having neglected to invest them, or to render an account thereof to James Valentine, one of the children of William, who had an interest in the estate under the will, an application was made to the surrogate, by James Valentine, for an account.   Upon the return of the citation the appellant applied to the surrogate for a final settlement of the accounts of the executors.   It did not appear by the return whether the children of William were cited to attend the

settlement of the accounts, or whether any guardian ad litem of their lunatic father was appointed. But counsel appeared for the lunatic; and his son James also attended upon the taking of the accounts before the surrogate. Stephen Valentine and Schuyler Valentine, the other two executors to whom the letters testamentary had been issued, and who had joined in the conveyance of the real estate under the will, were cited and rendered their accounts. The only account of one of them, however, was a charge of $28,08, for his services and expenses as one of the executors; no part of the proceeds of the estate having actually come to his hands. Frederick Valentine, one of the residuary legatees, also attended before the surrogate, and claimed one third of the residuary estate in the hands of the appellant, as well as one third of that which was in the hands of Stephen Valentine, one of the co-executors; after deducting the moneys which he had actually received from the appellant on account of his share. This claim against the appellant was resisted, upon the ground that it had been submitted to arbitration, by parol, and that a parol award was made, by the arbitrators, settling the balance which was due to the claimant from the appellant as one of the executors. The appellant also proved the parol submission and the award; and that the residuary legatee had received the amount awarded to be due to him; and that he had given to the appellant a receipt for the same, specifying that it was in full for the balance due him, from the complainant, as executor, for all moneys due and coming to him from the proceeds of the real and personal estate of the testator. The surrogate, however, overruled that defence, to the claim of this residuary legatee, and only allowed the appellant the sum which he proved that he had paid to Frederick, on account of his share of the residuary estate. The account of the appellant with the estate was then referred to an auditor; who stated the same, with interest at six per cent on the moneys received and paid out, down to the 6th of October, 1832. And the appellant was credited with several sums paid out after that time, and before the making of the auditor's report, in March, 1839. This included $100 paid to the appel-

Valentine *v.* Valentine.

lant's counsel upon the taking of the account, and $150 paid to the arbitrators for their fees upon the arbitration, between the appellant and Frederick Valentine, in relation to the balance due from the former to the latter, on account of his legacy; both of which sums, with interest on the $150 from the time it was paid, in 1834, were allowed by the surrogate as proper charges against the estate of the testator which belonged to the residuary legatees. The surrogate computed the interest at seven per cent, upon the balance due in 1832, and upon the expenditures of the appellant subsequent to that time. He also allowed to each of the executors who had received any portions of the estate, full commissions upon the amounts received and paid out by them respectively; but allowed no commissions to the other executors who had accepted the trust, and who had joined in the sale and conveyance of the real estate. The surrogate decreed that the balance in the hands of S. Valentine should be paid, one third thereof to F. Valentine, one third to the appellant, and the other third to W. Valentine, the lunatic legatee, or to whoever might be authorized to receive the same under the will of the testator. He also declared and decreed that the costs of the proctors and counsel of James Valentine and Frederick Valentine, the fees of the surrogate, and the claim of Schuyler Valentine for services, were proper charges upon the estate of the decedent; and that the appellant should pay them out of the balance found due from him. He farther declared and decreed that the appellant was entitled to retain one third of the balance in his hands belonging to the estate, as his distributive share as one of the residuary legatees, and directed him to pay one other third of such balance to F. Valentine, after deducting the payments already made, with interest thereon from the times they were paid. As to the other third, after deducting what had been paid for the support of the lunatic legatee, and the interest thereon, the decree directed the appellant to pay it to William Valentine, or whoever might be authorized to receive the same under the will of the testator; which third of the estate, after deducting therefrom one third of the commissions allowed to the appellant, amounted, on the

Valentine *v.* Valentine.

18th of March, 1840, the date of the decree, to about $8,000. But the decree did not ascertain or determine what part of this sum was the capital of the estate, in which the children of the testator's son William had a contingent interest, in case their father should die without having been restored to his reason, and what part was the interest which had accrued upon that capital, over and above the expenses and support of the lunatic.

The appellant appealed from the whole decree, and especially from certain parts thereof particularly specified in his petition of appeal. But he did not make Stephen Valentine, who was one of his co-executors, or any of the children of William Valentine, parties to the appeal. Frederick Valentine and Schuyler Valentine appeared and put in their answer, to the petition of appeal, by the same solicitor; and the lunatic re spondent answered by his guardian ad litem.

*W. Silliman,* for the appellant.

*J. Rhoades,* for F. & S. Valentine.

*J. W. Tompkins,* guardian ad litem for the lunatic, W. Valentine.

The Chancellor. The petition of appeal was informal in not designating who were intended to be made respondents; by praying that they might answer the petition. (*Kellett* v. *Rathbone,* 4 *Paige's Rep.* 102. *Gardner* v. *Gardner,* 5 *Id.* 170.) The parties, however, who are interested in the matters appealed from, and who have voluntarily appeared and answered the petition of appeal, cannot now object that the petition of appeal is informal as to them. But those against whom no proceedings have been had in this court, and who have not appeared or answered, cannot in any proper sense be considered as parties. And the decree of the surrogate can neither be affirmed nor reversed so far as their rights are concerned; but the appeal must simply be dismissed, so far as it seeks a reversal or modification of the decree, in any respect, which will affect their interests. The part of the decree, how-

Valentine *v*. Valentine.

ever, which relates to the distributive share of the respondent Frederick Valentine, as one of the residuary legatees, and so much of the decree for costs, in his favor, as charges any part of his costs upon the shares of the estate which the appellant would have been entitled to retain, for his own benefit, if the claim of Frederick to a distributive share of the fund in the hands of the appellant had been disallowed, can be reversed or modified without impairing the rights of any person who has not been made a party to this appeal. That part of the decree, therefore, must be reversed, in case it is found to be erroneous, and if it is a proper subject of consideration here. And, for the same reason, that part of the decree which directs the appellant to pay to Schuyler Valentine the sum allowed to him for his services, as one of the executors, and which directs the appellant to pay the costs of his proctor and counsel out of the estate, may be reversed upon this appeal, if found to be erroneous; although neither the children of William, nor Stephen Valentine, who is one of the co-trustees of the part of the fund which belongs to William and his children, are before the court upon this appeal. The objections of the appellant to these portions of the decree, I shall therefore proceed to consider.

The charges of Schuyler Valentine, for expenses in attending upon the probate of the will, and upon the settlement, are not verified in the manner required by law to make them evidence in his own favor; in the absence of written vouchers for the payments. The statute requires that the executor shall swear positively to the fact of payment; specifying when, and to whom, the payment was made. (2 *R. S.* 92, § 55.) It does not appear, however, that any objection to this account, or to the form of the oath to the same, was made by the appellant before the surrogate. And it is wholly improbable that such an objection was made by the appellant, who was himself allowed several items of expenses of a similar character, upon a general affidavit annexed to his account; and without specifying at what time, or to whom, such payments were made. It would, therefore, be unreasonable to allow an objection of this kind to be taken on appeal, when it might perhaps have

been obviated at once, by a new affidavit, had the objection to the form of the attestation been made before the surrogate. And as this respondent was subjected to the costs and expenses of accounting before the surrogate, without any fault on his part, the surrogate very properly directed the costs of his proctor and counsel to be paid out of the estate of the decedent. So much of the decree as directed the payment of the $28,08 to him, and the payment of his costs, must therefore be affirmed. And the appellant must also pay to him, or to his solicitor, interest on the amount directed by the surrogate to be paid to him and his proctor, from the date of the decree appealed from, as damages for the delay and vexation caused by this part of the appeal.

In relation to the claim of the respondent Frederick Valentine, I think the surrogate erred in holding that the appellant was bound to account to him, or that he was entitled to claim any part of the estate in the hands of the appellant. Even if a parol submission and award was not binding upon the parties, the statement of the account between them, by Ferris and McDonald, at their request, and the subsequent giving of the receipt in full, by the legatee, upon the basis of that statement, should be considered as conclusive between the parties; unless one of them could show that a mistake had been committed of which he was ignorant at the time. In other words, the party seeking to open such a settled account, should be able to show such a case as would have enabled him to file a bill in equity to surcharge and falsify the account. And the evidence before me does not make out such a case. Indeed the testimony shows that certain items paid to Frederick himself, and which were disallowed in the appellant's account against the estate, either because they were barred by lapse of time or otherwise, would, as between the appellant and Frederick, have been proper charges against the latter's third of the estate given to the residuary legatees. I also think there was a valid and binding submission and award, between these parties, which the surrogate was not authorized to disregard; even if it was evident, from the testimony before him, that Ferris and McDonald

Valentine *v.* Valentine.

had erred as to the amount which was due from the appellant, to this respondent, at the time of their award in 1834.

By the principles of the common law, it was not necessary that a submission to arbitrators should be in writing; except where the controversy was in relation to land, or to some matter as to which it was incompetent for parties to make a valid and binding agreement by parol. (*Billings' Law of Awards,* 9. *Kyd on Awards,* 7. *Walters* v. *Morgan,* 2 *Cox's Ch. Cas.* 369.) And where a submission is verbal, and without any provision therein that the award shall be in writing, a verbal award is valid. (*Cable* v. *Rogers,* 3 *Buls. Rep.* 311.) In the case of *Wells* v. *Lain,* which came before the court of errors in 1835, (15 *Wend. Rep.* 99,) I was strongly inclined to the opinion that the provisions of the revised statutes required all submissions to arbitrators to be in writing. But the court of dernier resort having decided otherwise, in that case, I do not feel myself authorized to adhere to my own opinion in opposition to that decision. In the present case, there can be no doubt, from the testimony of Ferris and McDonald, that the parties intended to submit to them the question as to what sum was due from the appellant, to F. Valentine as one of the residuary legatees. And where a matter is submitted to arbitrators, it is not necessary that there should be any express agreement to abide by the award when made. For the law implies such an agreement from the very fact of submission. So much of the decree appealed from, therefore, as declares that there is a balance due to the respondent, Frederick Valentine, of the funds in the hands of the appellant, and so much thereof as directs the appellant to pay such supposed balance, and so much of the decree as allows costs to the said respondent, on the proceedings before the surrogate, and directs the payment thereof by the appellant, must be reversed. And Schuyler Valentine and Frederick Valentine having both appeared by the same solicitor, and joined in their answer to the petition of appeal, and the appellant having failed in his appeal as to one of them, and succeeded as to the other, neither of those parties is to have costs as against the other upon the appeal.

Valentine *v.* Valentine.

As between the appellant, and the respondent, W. Valentine, and the children of the latter, who are not made parties to this appeal, I do not see that any error has been committed, to the injury of the appellant. The error in the mode of computing the interest, if there was an error, was the other way. For as the appellant had neglected to invest the fund belonging to the lunatic and his children, as directed by the will of the testator, and had mixed it with his private funds in the bank and used it as his own, the surrogate might properly have charged him with what would have been made by investing the money, and re-investing the income thereof, from time to time, beyond what was required for the support of the lunatic. And in the allowance of commissions, the surrogate clearly erred in favor of the appellant, by allowing him more than he was legally entitled to. The allowance of commissions should be computed upon the aggregate sums received and paid out by all the executors collectively, and not upon the amount received and disbursed by each individually ; so that five per cent only shall be charged upon the first $1000 of the whole estate, and two and a half per cent upon the next· $5000, &c. And the whole commissions should be apportioned among all the executors, either equally or upon some equitable principle, in reference to their respective services in the administration of the estate. But in this case, the surrogate has allowed to each of the executors who received and disbursed moneys for the estate, five per cent upon the first $1000, and at the rate of two and a half per cent upon the next $5000, received and disbursed by each ; thereby charging the estate with five per cent upon the first $2000 received and disbursed, instead of upon the first $1000 only.

The funds in the hands of the executors for the benefit of the lunatic and his children were held by them in their characters of executors; and the trust and the executorship were inseparable. The appellant, therefore, was not entitled to double commissions, first in his character of executor and again in his character of trustee. The case would have been different if the executors had been directed by the will to pay over this part of the fund to one of their number, as a trustee,

Valentine v. Valentine.

upon a separate and distinct trust. All that was proper to be done under the will of the testator, in the present case, was to invest the capital of the share of William upon permanent securities, in the names of all the executors jointly, as such; so as to preserve the capital of this portion of the estate for the use of those who might eventually be entitled to the same under the provisions of the will. The income arising from such investment, beyond what was necessary for the support of the lunatic, should have been reinvested, for his use and benefit, from time to time as it was received. And the decree in this case should have directed that the funds in the hands of both of the executors, belonging to this share of the estate, be reinvested in that manner until the happening of the contingency upon which it was to be paid over to the lunatic, or to his children, absolutely. If the proper parties were before the court therefore, it might be proper to modify the decree accordingly. But even as the decree stands, there is nothing which prohibits the appellant, either from making such investments, or applying the income to the support of the lunatic until the time arrives for paying over the capital of the fund, to him, or to his children, as directed by the will.

The costs of James Valentine were rightfully allowed against the estate, as it was proper for him to call for an account, not only for the purpose of seeing that the fund in which he had an interest was regularly invested, but also to ascertain the amount of that fund. The fact that it was to be held in trust by the executors until the death or restoration of the lunatic to sanity, did not form any objection to the settlement of the account for the purpose of determining what the amount of the trust fund was; although the executors could not be decreed to pay over the money, until the time arrived for its payment, either to the lunatic or to his children, in conformity to the directions of the will. But as James Valentine is not a party to the appeal, this part of the decree can neither be affirmed nor reversed. Nor can the court, upon the appeal between the present parties only, alter or modify the decree in relation to the surrogate's fees  Some part of those fees must have arisen

from services performed by him for parties who are not before me upon this appeal. And if this part of the decree should be reversed, it might leave those parties liable to the surrogate for such fees, and without any remedy over for the same against the appellant, although he has actually been allowed for those fees, in his account against the estate.

Several other questions are raised by the appellant's counsel which cannot properly be disposed of, on account of the absence of the necessary parties. All that is proper to be done, therefore, is to dismiss the appeal as to every part of the decree, except as to the parts thereof which I have before disposed of between the appellant and the respondents Frederick and Schuyler Valentine. The proceedings must also be remitted to the surrogate of the county of Westchester; to the end that such parts of the decree appealed from as are not reversed, may be carried into effect in that court.