WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURRO-
GATE.—January, 1882.

## MEEKER v. CRAWFORD.*

*In the matter of the judicial settlement of the account
of SAMUEL M. MEEKER, and three others, as trustees
under the will of WILLIAM LAYTIN, deceased.*

The provisions of *Laws* 1850, ch. 272, and *Laws* 1866, ch. 115 (each ex-
pressly amending 2 *R. S.*, 94, § 66†), affected only cases of express
trusts, and possibly powers in trust, authorized by statute, and had

---

* In TYLER v. HART (Westchester county, HON. OWEN T. COFFIN, Sur-
rogate, January, 1882), it appeared that the will of John Hart directed his
executors to sell and convey his real estate, and, with his personal estate,
to make a division into four equal parts; to pay one of said fourth parts to
each of three children; and to invest one-fourth part on bond and mortgage,
and pay the income thereof, for life, to his child Abigail J. Hart, remainder
over. The executors had an accounting in 1863, when they were allowed
full commissions on the whole fund of $53,747.30, amounting to $712.44.
They also rendered a supplemental account in 1866, when they were allowed
$45.75, commissions on the funds which came into their hands since the
last accounting. The decree directed the executors to invest the fund.
The executor Tyler then took charge of the fund of which Abigail was en-
titled to the interest, and invested it as directed by the will, the other exec-
utor, Gedney Hart, having nothing to do with it. Tyler died in 1881,
leaving a will, of which William H. Tyler and Elias J. Hunt were exec-
utors. The latter, on accounting to Gedney Hart, the surviving executor
of Hart, for the funds in Tyler's hands, claimed that they were entitled to
full commissions on behalf of Tyler as trustee of the fund.

THE SURROGATE.—This case is clearly covered by the opinion in that of
Meeker v. Crawford (*supra*), and the commissions as claimed are disallowed.
The executors of Tyler, however, are allowed commissions at the rate of
one per cent., on all amounts of income received and paid out, and the half
of that sum on such as has been received and is now handed over to his
survivor.

---

In YOUNG v. YOUNG (decided at the same date, and by the same Surro-
gate, as Tyler v. Hart), it appeared that the testator, after directing the

† Expressly repealed by *L.* 1880, ch. 245.

no bearing upon the question of commissions where the offices of executors and so-called testamentary trustees are inseparably united in the same persons; and where such is the case, only single commissions can be allowed.

An executor, clothed with a power in trust, who has already had or is entitled to full commissions on $10,000 or over, cannot have full commissions, but can be allowed only one per cent. on annual income received and paid over; except, *it seems,* in the single instance where, on an accounting, annual rests are made for the purpose of compelling him to pay interest upon periodical balances which he should have invested.

When an executor, who is directed by the will to hold a fund in trust, renders his account as executor and retains such fund, he can have full commissions then, and will be entitled to only one per cent. on the income thereafter received and paid over, where he has already had commissions on $10,000 or over.

*It seems,* that double commissions are not allowable on the transfer of an estate from one executor or trustee to another, unless such other is directed by the will to take and hold it upon a separate and distinct trust; and the mere closing up, by executors, of their duties as such, and retaining the fund for beneficiaries under the will, does not effect such transfer.

The testator, by his will, gave his realty and personalty, amounting to over $1,400,000, to his four executors in trust, to pay debts, etc., and divide the residue into five shares, the income of which they were to receive and apply to the use of his five children, respectively, during life, and, after the death of any child, to distribute the principal of his share

payment of his funeral expenses, debts and legacies, gave the residue of his real and personal estate to his executors and the survivor of them, *their successors, heirs and assigns,* as joint tenants, upon trust to rent, manage, sell and invest the same, and to pay the income, in certain proportions, to certain beneficiaries for lives or terms of years, with remainder over. The inventory filed disclosed personal assets of the value of $1,457,641. In 1875, the executors rendered an account, and were then allowed commissions amounting to upwards of $16,000. By the account now rendered, it appeared that the amount of income received and paid over, during the year 1881, was $162,000. On this amount, they claimed full commissions as trustees.

THE SURROGATE.—The cases of Stagg *v.* Jackson (1 *N. Y.*, 206); Hall *v.* Hall (78 *N. Y.*, 535); and Hood *v.* Hood (85 *N. Y.* 561), all are in point to show that the accounting parties are executors only. The decision in Meeker *v.* Crawford (*supra*), furnishes the reasons why I must refuse to grant any greater commissions than one per cent. upon the fund.

See Matter of Roosevelt, *post.*

among the grandchildren. The will also gave the executors power to sell real estate, but provided that no securities should be sold. In 1877, the executors accounted, and were, by the decree, allowed half commissions, amounting to over $20,000, for receiving, and directed to retain and keep invested the balance of the estate, pursuant to the will. They thereafter paid over income quarterly, deducting therefrom one per cent. for each of three executors. On the death of one child, an accounting was had, with a view to the distribution of the principal of her share; the executors having sold securities held by them, for that purpose. They claimed half commissions also as trustees on the entire capital which came into their hands as trustees, and half commissions on the fifth about to be distributed. Various objections were filed to the account. *Held,*

1. That the functions of the executors, as such and as trustees, were inseparable, and they could not have full commissions in both capacities.

2. That, as the will did not give the income of any specific sum to any child, but the amounts to produce the income were uncertain, commissions on income paid over were deductible therefrom, and not a charge on the estate at large.

3. That the executors, in retaining their commissions on income, did not violate the rule forbidding appropriation of funds without allowance by the Surrogate,—their account having been settled on a previous accounting; but that they had no right to take half commissions at once, on first receiving the funds of the estate,

4. That, in view of the amount and character of the estate, the employment of a clerk by the executors, at $600 annual salary, was proper, and his compensation a reasonable disbursement.

5. That, notwithstanding the prohibition to sell securities, such a sale was intended and justifiable, being necessary to a distribution of the share of the deceased child.

---

The act of 1866 (ch. 115), was the only law authorizing Surrogates to allow commissions to testamentary trustees. *It seems,* that by its repeal in 1880, the subject of such commissions was left wholly unprovided for, except (under Code Civ. Pro., §§ 2736, 2811), in a case where the personal estate exceeds $100,000.

THE decedent, by his will, devised and bequeathed his entire estate, real and personal, to his executors *in trust*, to pay debts and certain legacies; to build a family vault; and to divide the residue into five equal shares, and receive the rents, income and profits of each share, and apply them to the use of his five children,

severally, for life, and at the death of each life beneficiary, to pay and distribute the principal of that share to and among grandchildren of the testator equally, etc. The executors were also clothed with power to sell the real estate.

In 1877, the executors rendered an account before the Surrogate, and a decree was entered fixing one-half their commissions, for receiving, at between $23,000 and $24,000, and directing the executors as trustees to retain the balance of the estate then in their hands, amounting to upwards of $1,430,000, to be held and kept invested by them as directed by the will. There was another accounting by them in 1879, but the amount of commissions then retained did not appear in the decree, and the amount then in their hands was about $4,000 in excess of that found on hand at their first accounting. It appeared that they had paid over the income to the children quarterly, and taken receipts in full therefor, deducting therefrom one per cent., for each of three of the executors.

Mrs. Ricard, one of the five life beneficiaries, having died, this accounting was had with a view to distributing the one-fifth of which she had the use, among those entitled thereto under the provisions of the will, the executors having sold securities held by them for that purpose ; and they now claimed half commissions also, as trustees, on the entire capital which came into their hands as trustees, and half commissions on the one-fifth now about to be distributed.

The executors employed a clerk at a salary of $600 a year, to aid them in the discharge of their duties.

Counsel for beneficiaries objected that the executors

could not have commissions in their capacity of trustees; that, as the will gave a specified sum in trust for the lives of the beneficiaries, with remainder over, they could not have commissions out of the incomes, but that they were properly chargeable to the body of the estate; that the commissions on income could not be retained at the times of payment, but could only be recovered on an accounting and settlement before the Surrogate; that the clerk hire was an improper charge; and that the executors had no authority to sell the securities which had been sold for the purposes of this distribution.

S. M. Meeker, *in person, and for the other trustees.*

M. J. O'Brien, *for Singleton L. Crawford, and other adult grandchildren.*

D. T. Walden, *guardian ad litem for infant grandchild.*

The Surrogate.—The most interesting question for consideration in this case is the amount of commissions to which the executors are entitled. The precise point involved has never been determined by the court of appeals, nor by any court whose decision I should be obliged to regard as binding authority. Hence it becomes necessary to lay down such rule of action for future guidance in such matters, in this court, as may be deduced from the history of the subject, the statutes, and the decisions relating to them.

Formerly, in England, executors, administrators and other persons, acting in a fiduciary capacity, were allowed no compensation by way of commissions, but were allowed their necessary expenses (*Perry on Trusts*, § 904); and the same rule existed in this State, down to the early part of the present century (Green *v.* Winter, 1 *Johns.*

*Ch.*, 37 ; Manning *v.* Manning, *Id.*, 534); when the chancellor was authorized by the legislature to fix an allowance by way of compensation, over and above their expenses, for the services of guardians, executors and administrators, on the settlement of their accounts (*Laws* 1817, ch. 251). In the same year, the chancellor proceeded to fix such allowance at five per cent. on the first $1,000 (that is to say, two and one-half for receiving, and two and one-half for paying out), two and one half on any excess between $1,000 and $5,000, and one per cent. for all above the latter sum (Matter of Roberts, 3 *Johns. Ch.*, 43, 630). Power to fix compensation *to trustees* was not conferred by the act, but subsequently the chancellor followed the same rule as to their compensation, where the instrument creating them fixed none. Thus the matter remained down to the adoption of the Revised Statutes, when the chancellor's rule, in so far as executors and administrators are concerned, was made a matter of legislative enactment (2 *R. S.*, 93, § 58). By Laws 1863, ch. 362, § 8, the compensation was increased to five per cent. on the first $1,000, two and one-half per cent. on the next $9,000, and one per cent on all sums above ten thousand. And this remains the present rate, except that each executor may, by the act of 1863, where the estate exceeds $100,000, receive full commissions.* The fact that any pay for services was at first granted, and finally advanced to its present rate, is probably due, in part, to the increased and often complicated duties imposed upon these officers by law, and by the instruments they are appointed to execute. The duties devolved upon an executor, by law, according to the ancient authorities, were, 1st, to

---

*For the present law, see Code Civ. Pro., § 2736, *et seq.*

bury the deceased ; 2nd, to prove the will; 3d, to make
an inventory ; 4th, to collect the goods ; 5th, to pay the
debts ; 6th, to pay legacies ; 7th, to distribute the resi-
due (*Jacob's Law Dict.*, tit. "Executor"), and no com-
pensation was, as has been stated, allowed him for dis-
charging those simple duties. But as the labor,
responsibility and care became greater, with the increase
and general diffusion of wealth ; when testators began to
clothe their executors with power to lease or sell real
estate, and make the office otherwise more burdensome ;
there appeared to be a necessity for granting some al-
lowance for the services required to be performed, lest
suitable persons could not be found to undertake the
office. To these considerations, is probably due the legis-
lation above recited. By Laws 1822, p. 283, § 3, incor-
porated in 2 *R. S.*, 109, § 57, the Surrogate was authorized
to call executors to account for proceeds of real estate,
ordered by the will to be sold for the payment of debts or
legacies ; and by Laws 1837, ch. 460, § 75, it was provided
that, where real estate was sold by virtue of an authority
contained in the will, the proceeds might be distributed
under the direction of the Surrogate. Notwithstanding
the conferring of this additional jurisdiction upon the
Surrogate, the compensation of the executors remained as
fixed by the Revised Statutes, in view of all the duties
they were empowered, or directed to discharge.

It is claimed that, in this case, the executors are en-
titled to commissions, not only as executors, but also as
trustees,—in other words, double commissions. Doubt-
less executors, administrators, guardians and others act-
ing in a fiduciary capacity, are, at common law, trustees ;
and since executors, in view of their powers and duties

as such, have their commissions fixed, they should not be permitted to receive double the amount, unless there be some provision of law plainly awarding it. It is insisted that such a provision is found in *Laws* 1866, ch. 115. In 1850, an act (ch. 272), precisely like that of 1866, except that it did not purport to be an amendment of any existing law, and except that it contained no provision in regard to commissions, was passed. Perhaps, in order to supply these omissions, the later law was enacted. 2 *R. S.*, 94, § 66 (1st ed.), provided that "The last preceding section" (declaring the effect of a final settlement before the Surrogate) "shall not extend to any case where an executor is liable to account to a court of equity, by reason of any trust created by any last will and testament." Plainly, this implied that there were common law trusts, or powers in trust, over which Surrogates had jurisdiction, and also had in view the act of 1822 (2 *R. S.*, 109, § 57). The act of 1866, in question, reads as follows:

"Section 1. The sixty-sixth section of the third article of title third of the sixth chapter of the second part of the Revised Statutes, is hereby *amended* so as to read as follows:

"§ 66. Any trustee created by any last will and testament, or appointed by any competent authority to execute any trust created by such last will and testament, or any executor or administrator with the will annexed, authorized to execute any such trust, may, from time to time, render and finally settle his accounts before the Surrogate. . . . . On all such accountings *of such trustees*, the Surrogate before whom such accountings may be had shall allow to the *trustee* or

*trustees* the same compensation for his or their services
by way of commissions, as are allowed by law to execu-
tors and administrators, and also such allowance for ex-
penses as shall be just and reasonable. . . . ." It
must be taken for granted, I think, that the object of
the act of 1850 was to confer upon Surrogates powers
they did not before possess, and that belonged exclu-
sively to chancery, now the supreme court, and that that
of 1866 was to authorize them to allow compensation
such as the supreme court would do in such cases, and
which was lacking in the act of 1850. Surely, it could
not have been the design of the legislature to provide for
the granting of commissions to which they were already
entitled by law. It would have been a work of superer-
ogation. I think, too, that the words " trust " and
" trustee " relate exclusively to statutory trusts over
which Surrogates had then no jurisdiction, and that the
act in question, in so far as additional jurisdiction and
the allowance of commissions are concerned, relates
exclusively to those few express trusts allowed by stat-
ute (1 *R. S.*, 728, § 55 ; Wright *v.* Trustees M. E. Ch., 1
*Hoff. Ch.*, 202, 215) ; that it has no relation to, or bear-
ing upon a case where the same person or persons are
clothed with power, as executors and so-called testa-
mentary trustees, over the same fund, and were thereto-
fore authorized to account concerning the same before
the Surrogate. Whenever the term " testamentary
trustee " is used in the new Code and elsewhere, it is
only for the purpose, I take it, of distinguishing a trustee
appointed by will, from one appointed by trust deed or
otherwise. The word " trustee," when employed in a
statute in this connection, means solely a person author-

ized to execute one of the trusts, and possibly one of the powers in trust, permitted by the statute. Calling him a testamentary trustee only indicates the mode of his creation.

The employment, in the act referred to, of the phrase "administrator with the will annexed authorized to execute any such trust," probably sprang from the fact that it was then a mooted question, whether he could execute all the powers conferred by the will upon the deceased executor.

If, however, one person be appointed executor, and be directed, on the completion of his duties, to hand over a remaining fund to another who is to take and hold it in a fiduciary capacity, for specified purposes, then will be presented a case for double commissions, independent, however, of the statute in question. So, if the executor die, or his letters for any reason be revoked, and an administrator with the will annexed succeed him, or an administrator *de bonis non* succeed to the duties of an administrator, there will be presented cases where more than the usual statutory commissions must necessarily be allowed, also without regard to that act. But where the testator creates, by his will, one of the express trusts permitted by statute, and appoints a trustee or trustees to execute it solely, then will arise a case for an accounting, and allowance of commissions and expenses, under the statute of 1866.

Where the executors are directed, or are authorized by the will to sell real estate and hold the proceeds in trust for the purposes of the will, they act throughout as executors, and the Surrogate might, before the acts of 1850 and 1866, call them to account as such. Thus, in

Stagg *v.* Jackson (2 *Barb. Ch.*, 86 ; affi'd, 1 *N. Y.*, 206), where the testator devised and bequeathed all his estate, real and personal, to his executors as joint tenants, *in trust*, to sell the same, and until such sale to receive the rents, income and profits thereof, for the purposes of the will, and upon trust to invest, etc., and to pay certain annuities to his children until of age, then to divide the trust fund and the income into nine equal parts, to pay over three of said parts severally to each of three children, and to hold the other six parts in trust for the six remaining children ;—the chancellor held that the Surrogate had jurisdiction to take the account, the same as if the proceeds had been originally personal property (2 *R. S.*, 109, §§ 55, 57) ; that the trust to receive rents was a mere incident to the direction to convert the real estate into money for the purposes of the will, and that there was, therefore, no reason to take two accounts, one before the Surrogate, and the other in the court of chancery. To the same effect, on the first point, Denne *v.* Judge (11 *East*, 288) ; Bogert *v.* Hertell (4 *Hill*, 492) ; Clark *v.* Clark (8 *Paige*, 152) ; Hosack *v.* Rogers (9 *Id.*, 468) ; Valentine *v.* Valentine (2 *Barb. Ch.*, 430) ; all having arisen and been determined before 1850. It necessarily follows, that, in all such cases, they can now, as formerly, receive commissions in only one capacity. By settling up as executors, and then holding a fund in trust, under the will, whether done voluntarily or by decree of the court, they do not become entitled to full double commissions on the fund :—not as executors, because retaining it for another purpose is not a "paying out" such as entitles them to half commissions for that act (Hall *v.* Hall, 18 *Hun*, 358 ; affi'd, 78 *N. Y.*, 535) ;

nor as trustees, because they hold it merely as executors. (See Dixon v. Homer, 2 *Metc.*, 420.) In all these and the like cases, the trusts and the executorship are inseparable (Valentine v. Valentine, *supra*).

Nor can double commissions be allowed on the handing over of the fund by one executor or trustee to another (Jones' case, 4 *Sandf. Ch.*, 616 ; Kellogg's case, 7 *Paige*, 267 ; Hosack v. Rogers ; Valentine v. Valentine, *supra*) ; but they will be allowed, where the executors are directed by the will to transfer to one of their number, as trustee, to be held by him upon a separate and distinct trust (Valentine v. Valentine, *supra*).

Neither can an executor or trustee be allowed full commissions on annual income received and paid over, but he will be allowed one per cent., only, where he has already had, or is entitled to have full commissions on $10,000 (Valentine v. Valentine, *supra ;* Drake v. Price, 5 *N. Y.*, 430 ; Lansing v. Lansing, 45 *Barb.*, 182) ; unless required, by order of the court or otherwise, to make periodical statements of his account, as was formerly provided for in the case of general guardians by the 154th Chancery Rule, and now by statute ; or where annual rests are made for the purpose of compelling him to pay interest upon periodical balances, which ought to have been invested by him (Hosack v. Rogers, *supra*).

Should it be claimed that the act in question was intended to embrace a trustee or donee of a power in trust, as well as a trustee created under the article " of uses and trusts," it may, perhaps, be conceded, provided his duties, as donee of the power, are separable from his duties as executor ; but that, I apprehend, can only be done in very rare cases. Those of Meakings v. Crom-

well (5 *N. Y.*, 136); Valentine *v.* Valentine; Hall *v.* Hall (*supra*); Hood *v.* Hood (85 *N. Y.*, 561), and others which might be cited, present instances of powers in trust so interwoven with executorial duties as to render a separation of them impracticable; and this case is precisely like them in this respect.   In all these cases there were *legacies* to be paid, and that duty belongs to the office of executor, and may be enforced by the Surrogate. Hence, the power to sell not being separable from the duty to pay legacies, they must be regarded as executors only.   Converting the realty into money and investing it to pay legacies under the will effects no change, as they still have the legacies to pay.   Hence it would be erroneous to allow them commissions as trustees, when they are not clothed with that character.

It will thus be seen that I reach a different conclusion from that arrived at by the learned Surrogate of New York, in the Matter of Pirnie (1 *Tucker*, 119); Cram *v.* Cram (2 *Redf.*, 244); Matter of Carman (3 *Id.*, 46); and Ward *v.* Ford (4 *Id.*, 34).   It is with considerable hesitation, and after a careful consideration of the whole subject, that I am led to differ from gentlemen so learned and so devoted to a conscientious and intelligent discharge of their duties.   The failure of the court of appeals, in Hall *v.* Hall (*supra*), to indorse the doctrine of those cases, induced an investigation of the point. The conclusions I have reached are:

1. That the acts of 1850 and 1866 affect only cases of express trusts, and possibly powers in trust, authorized by statute, and have no bearing upon the question of commissions where the offices of executors and so-called testamentary trustees are inseparably united in

the same persons ; and that, where such is the case, single commissions only can be allowed.

2. That double commissions are not allowable on the transfer of the estate from one executor or trustee to another, unless such other is directed by the will to take and hold it upon a separate and distinct trust ; and that a mere closing up of their duties as executors, and retaining the fund for beneficiaries, under the will, does not operate such transfer.

3. That an executor, clothed with a power in trust, cannot be allowed full commissions on annual income received and paid over, but will be allowed one per cent. only where he has already had, or is entitled to have, full commissions on $10,000 ; except in the single and rare instance where, on an accounting, annual rests are made, for the purpose of compelling him to pay interest upon periodical balances which ought to have been invested by him.

4. That when executors, who are directed by the will to hold a fund in trust, render their account as executors and retain such fund, they can have full commissions then, and will only be entitled to one per cent. on the income thereafter received and paid over, where they have already had commissions on $10,000 or over.

The allowance of commissions in this case will be based upon the views above expressed. If the executors, as is claimed, took half commissions, at once, on receiving the funds of the estate, on entering upon the discharge of their duties, they did what they were not authorized to do ; but I suppose that the parties, having been all cited, are concluded by the accounting of 1877.

The objection to the charging of commissions on the

incomes paid over, I do not consider well taken, for the reason that the will does not give the income of any specific sum to any of the life beneficiaries. The amounts to produce the incomes were uncertain.

The executors (three of them as I make it), each retained one per cent. on the income received and paid out. As the estate far exceeded $100,000, I think they were right in doing so, and did not thus violate the general rule, that executors have no authority to appropriate sums to their own use, as commissions, until they are allowed by the Surrogate on the settlement of their accounts. That rule would have been applicable to the accounting of 1877.

Considering the unusual magnitude of the estate, and the nature of the numerous securities in which it was chiefly invested, I think the employment of a clerk, at the moderate salary paid, was calculated to be beneficial, and the amount paid is allowed as a reasonable charge.

Notwithstanding the provisions of the will, to the effect that no securities should be sold, still I think such a sale was intended, else how could the distribution now comtemplated by its provisions be effected? Allowances out of the fund will be made on the usual affidavits.

Subsequently to delivering the foregoing opinion, the Surrogate said :

Ordinarily, courts examine and consider only the cases and statutes cited by astute and contending able counsel. That this is not always an entirely safe course for the court to pursue is exemplified in this case. After the preparation of the foregoing opinion, it has been discovered that the act of 1866, ch. 115, has been repealed,

leaving the act of 1850 still in force.* It is not easy to keep a careful reckoning of the kaleidescopic changes in the statute law, if the eye be withdrawn for only an instant from the steadily-revolving cylinder. The act of 1866 was the only law by which the Surrogate was authorized to allow commissions to testamentary trustees. That having been repealed as stated, there is no provision for their allowance other than may be found in the Code. Section 2811 makes several prior sections applicable to the case of the accounting of a testamentary trustee, none of which seem to, in any way, affect the question, except section 2736,—which provides that "where the value of the personal estate of the decedent amounts to one hundred thousand dollars, or more, over all his debts, each executor or administrator is entitled to the full compensation allowed by law to a sole executor or administrator, unless there are more than three ; in which case, the compensation, to which the three would be entitled, must be equally divided among them."

While the fact of the repeal and this recent enactment do not have any particular effect upon the result reached in the opinion, as the personal estate far exceeded $100,000, yet it seems to leave the subject of commissions to such trustees wholly unprovided for, except in the single case mentioned in the section ; and it in no way affects the conclusion that an executor and trustee, whose functions are not separable, cannot have commissions in both capacities.

---

* It would seem that L. 1880, ch. 245, § 1, subd. 2, (3), and *Id.*, § 2, repealed 2 *R. S.*, 94, § 66, and, with it, the acts of 1850 and 1866.—REP.