WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—December, 1883.

RICARD V. LAYTIN.

*In the matter of the estate of* WILLIAM LAYTIN, *deceased.*

A receipt for a sum paid, given by an adult legatee under a will to the executor thereof, with a complete knowledge of the facts, cannot, in the absence of unfair conduct on the executor's part, be avoided on the ground of a mistake in law, whereby the latter retained commissions at too great a rate.

Petitioner applied for the opening of a decree rendered in May, 1882, in a proceeding to which he was a party, alleging, as the ground of his application, the existence of certain rights of which he had been apprised for more than a year, by means of a decision of the Surrogate in another case. There was no proof of fraud, no clerical error, and no pretence of new evidence.—

*Held,* barred by laches.

The question of the proper rate of commissions of testamentary trustees upon receiving and paying out income of a fund, on the principal of which they have received commissions as executors—considered.

Drake v. Price, 5 *N. Y.*, 430—commented upon.

JOHN A. RICARD, administrator of Maria M. Ricard, who was a daughter, and legatee under the will, of William Laytin, deceased, asked for a new hearing of three accountings made by the executors, in which decrees were entered, respectively, in 1877, 1879, and 1882, on an account filed in October, 1881. Mrs. Ricard was a party to the accountings of 1877 and 1879, and died in July, 1881. The applicant, as her administrator, was a party to the last accounting. It appeared that William Laytin, son of the deceased, and the other executors, in the accountings of 1877 and 1879, retained greater commissions than they were legally entitled to receive, in this manner ; that the children, by the will,

were entitled to the income of portions of the estate, which the executors were in the habit of paying over quarterly, retaining, out of each share, commissions at the rate of five per cent. on the first $1,000, two and one-half per cent. on the next $9,000, and one per cent. on all sums beyond; that it was their custom to present to each beneficiary, upon the payment of income, a particularized statement of the gross income and deductions for commissions, expenses, etc., and to take a receipt for each payment, but that there was no particular statement made of the amount deducted for commissions; that attention was first drawn to the matter by the opinion of the Surrogate (in January, 1882), wherein he held that they were entitled to commissions on income only at the rate of one per cent. each.

Affidavits were read in opposition, showing that, on each payment of income, there was delivered to each of the legatees a detailed statement concerning the income for the quarter then ended, showing the amount of the gross income for that quarter, and every item thereof, with the source from which it was derived, with all the expenses and commissions claimed to be deducted therefrom; and that the proper share, after making such deductions, as shown thereby, was paid to Mrs. Ricard, down to the time of her death, and to the other beneficiaries, and she and they gave receipts in full thereof, on which the several decrees were based.

EUGENE H. POMEROY, *for the motion.*

ALBERT J. McDONALD, *opposed.*

THE SURROGATE.—This application is resisted upon two grounds: *1st,* that Mrs. Ricard, being of age, was concluded by her receipts in full, which were given on

complete knowledge of all the facts; and *2nd*, that her administrator is precluded from the relief sought, by reason of laches in making the application.

As to the first point, it would seem that the executors acted with perfect fairness in submitting to Mrs. Ricard, at each payment of income, a complete statement in figures showing in detail the amount received, the expenditures, and the amount proposed to be, and which was, retained as commissions. She, therefore, had an exact knowledge, when she gave her receipts in full, of all the essential facts relating to the subject of commissions. Clearly, the executors believed themselves to be entitled to such commissions; and although I held differently on the last accounting (Meeker v. Crawford, *5 Redf., 450*), yet the subject has still to be settled by our highest court. The case of Drake v. Price (*1 Seld., 430*) seems to have caused some doubt and conflict of opinion, as to whether executors acting in a special fiduciary capacity, in receiving and paying out income, are entitled to full commissions on it at each payment; and I have now pending before me a claim made by an executor, who is a lawyer, to just such commissions. His argument is, that the law of 1866, which was in force when he was appointed, and under which he obtained vested rights in that regard, provided that the Surrogate should allow to trustees, on *all* accountings, the same commissions as were allowed to executors and administrators, and that, therefore, he is entitled to full commissions on each accounting. The most that can, therefore, be said in this case, is that it was purely a question of law, involved in some doubt, and if the parties were mistaken on the subject, that fact furnishes no ground for re-

dress. There is nothing to sustain the allegation of fraud; there was no clerical error; and there is no pretence of the discovery of new evidence in the case.

On the second ground also, I think the application must be denied. The administrator of Mrs. Ricard is presumed to have come into possession of the statements furnished to her by the executors in her lifetime. He was a party to the last accounting, and states, in his affidavit, that his attention was first drawn to the matter by the opinion delivered by me in January, 1882, in that case. The application was made on October 10th, 1883, which was about a year and nine months after he says his attention was so drawn to the matter. After having thus acquired the necessary knowledge, he should have at once asked for such relief as he deemed himself entitled to, and not have delayed action for nearly two years. Under such circumstances the law does not permit a man to lie idle without imposing, as a penalty, the ripening of an alleged wrong into an established right.

The application must be dismissed, with costs of the motion to the executor.