WESTCHESTER COUNTY. — HON. OWEN T. COFFIN, SURROGATE.—February, 1885.

HAWLEY *v.* SINGER.

*In the matter of the judicial settlement of the account of* DAVID HAWLEY, *as guardian and trustee, under the will of* ISAAC M. SINGER, *deceased, of* ADAM M. SINGER.

A trustee, *durante minore œtate*, is entitled to commissions on amounts received by him after the *cestui que trust* has arrived at full age and become entitled to the possession of the fund, until his duties are terminated by a final judicial settlement of his accounts.

Estate of Pirnie, *Tucker*, 119—disapproved.

Cowing v. Howard, 46 *Barb.*, 579—distinguished.

A statute establishing a rate of commissions allowable to trustees is not in the nature of a contract, so as to remain in force, notwithstanding the repeal thereof, as to one who assumed the duties of a trust before such repeal.

*It seems*, that no commissions are allowable to an executor upon the value of articles specifically bequeathed.

While a Surrogate's court has not power to open and reconsider, on the ground of legal error, an adjudication already made, still where full commissions have been inadvertently awarded on a fund as received and paid out, when in truth it had been received and not paid out, such a tribunal may, in a subsequent accounting, take cognizance of the fact, and decline to award half commissions again for paying out.

Where the accounts of executors or administrators are subjected to successive judicial settlements, they are entitled, on the first accounting, to full commissions on all moneys received and paid out, and half commissions only on moneys received and not paid out; on the second,

they are allowed the other half on moneys since paid out, and full commissions on the increase received and paid out, or directed by the decree to be paid; taking care, however, that the total award shall not exceed what would have been full commissions, had the whole estate been finally settled, on one accounting.

The executor of decedent's will, who was also trustee of a trust thereby created for the benefit of an infant during his minority, had an accounting in 1877, in the former capacity, on which he was allowed full commissions upon the entire amount of the estate, which was then more than $9,000,000. In 1881, he accounted as trustee, and was allowed full commissions upon the amount of the trust fund, which was one sixth of the residue. The *cestui que trust* having reached his majority, and proceedings having been instituted for the judicial settlement of the trustee's account, with a view to the transfer of the fund, now about $1,500,000, to the beneficiary,—

*Held*, that the only compensation allowable to the accounting party was commissions at the rate of one per cent. on the amount of increase since the last accounting.

AFTER bequeathing certain legacies, and making some other provisions, Isaac M. Singer, deceased, by his will, directed the residue of his estate to be divided into sixty parts, ten of which were given to his son, Adam Mortimer Singer, then a minor, but who recently attained his majority. The will contained this clause:

'*Eighth.* I hereby nominate and appoint my said executors guardians and trustees of the estate of such of the above named legatees as are under the age of twenty-one years at the time of my decease, to continue such guardians and trustees until said legatees shall respectively arrive at that age."

There were two executors named, but one died before the will was proved, leaving David Hawley the sole survivor. The share of said Adam M. Singer was now payable to him, and this was an accounting in reference thereto. The chief question arising was in regard to the amount of commissions to which Mr.

Hawley was entitled. He rendered and settled his account as executor in 1877, when he received full commissions on the whole fund, which then amounted to between $9,000,000 and $10,000,000. Again there was an accounting, as to the share in question, in 1881, on which occasion he received, substantially, full commissions thereon as trustee. It was insisted that he could not be permitted to have them again. The proceeding on the accounting of 1881 was commenced in June, 1880, before the repeal of the act of 1866 (ch. 115).

Objection was made to certain charges for clerk hire, office rent, etc., amounting to some $330 · per annum; also to certain items of charges for fees paid to counsel for services rendered, or to be rendered, in this proceeding. ·

F. N. BANGS, *for executor.*

C. E. TRACY, *for objector.*

THE SURROGATE.—In view of the fact that the Court of Appeals held, in the case of Hood v. Hood (85 *N. Y.*, 561), that the person named to execute the will of the deceased, who was a non-resident, and, as such, gave the bond required by the statute, in such case, was, for the purpose of fixing the liability of his sureties, simply an executor and not a trustee; and that the same Court, in 90 *N. Y.*, 512, intimated that the same person might be a trustee; that the Supreme Court, in 19 *Hun*, 300, decided that the same individual was not a trustee under the will, and again, in 33 *Hun*, 338, that he was; and also in view

of the case of Johnson v. Lawrence (95 *N. Y.*, 154), reversing the judgment below on the same point; and of numerous other cases upon the subject, it is not an easy matter, amid all this apparent confusion and conflict, to determine, with any degree of assured accuracy, whether a person named to execute the provisions of a will continues to be an executor until the final closing up of the estate, or whether, at a certain point, his duties as executor have ceased and he becomes clothed with the office of trustee. This will, doubtless, continue to be a vexed question, unless legislative wisdom shall interpose, and declare no one to be a trustee under a last will and testament, unless appointed to execute one of the trusts allowed to be created by the statute of Uses and Trusts, and that, in all other cases, he shall be merely an executor. I made an unsuccessful attempt to establish some such rule in the case of Meeker v. Crawford (5 *Redf.*, 450). All that can now be done in this regard, by an inferior tribunal, is to follow the latest decision of the court of last resort.

The executor had an accounting, as such, in 1877, when he was allowed full commissions on the whole amount of the estate; again, in 1881, he had another accounting as trustee, and received full commissions on the whole of the contestant's fund, and is now, as it seems to me, entitled to them on the increase, only, since the last accounting. This leads to a consideration of the question, as to whether full commissions can again be allowed under the act of 1866 (chap. 115); the language being that "on *all* such accountings of such trustees, the Surrogate, before

whom such accounting may be had, shall allow to the trustee or trustees, the same compensation for his or their services, by way of commissions, as are allowed by law to executors and administrators." The statute, if now applicable, would authorize an allowance to him of only such commissions as could be granted to an executor or administrator. The latter ·frequently have a second and a third accounting. In such cases, they are entitled, on the first accounting, to full commissions on all moneys received and paid out, and half commissions only on moneys received and not paid out. On the second accounting, they are allowed the other half, on money since paid out, and full commissions on the increase received and paid out, or directed by the decree to be paid; taking care, however, that all of such commissions shall not exceed what would have been the full commissions had the whole estate been settled on one final accounting. That is the mode in which commissions are allowed on "all accountings" of executors and administrators; and it seems to me that is all which is contemplated, in reference to the compensation of trustees, by the act of 1866. I therefore, reach a conclusion different from that arrived at in the Estate of Pirnie (*Tucker*, 119). That act, however, was repealed in 1880; but, notwithstanding such repeal, the question remains whether, the trustee having assumed the duties of the trust while it was in force, his rate of compensation can legally be diminished; whether it was not in the nature of a contract between himself and the deceased, which cannot be disregarded with-

out doing violence to a provision of fundamental law. I think not. Before there was a provision to the contrary, a public elective officer, entering upon the discharge of his duties at a certain rate of compensation, could not successfully resist a legislative enactment reducing it, upon the ground that there was an implied contract, between him and those who elected him, to the effect that he was to have the usual salary theretofore pertaining to the office (see People v. Burrows, 27 *Barb.*, 89). It is well settled that costs shall be allowed to a party at the rate fixed by the law in force at the time the verdict or decision is rendered, whether such rate shall have been increased or diminished since the action was commenced. The law allowing commissions to executors was enacted in 1817. One who entered upon his duties prior to that date, but rendered his account after it, would undoubtedly have been entitled to his commissions under that act. But this is immaterial to the decision of this case, if the view above expressed, that a trustee can have only such commissions as an executor, be sound.

It is objected that the executor should not have commissions on the shares of stock in the Singer Manufacturing company bequeathed to the contestant by the testator. The ground of the objection is that an executor cannot be permitted to receive them on the value of articles specifically bequeathed. The objection would be good, if there were such specific bequest. But I think there was not. The question, however, strikes me as also immaterial. The executor, as such, having already had full commissions on

it in 1877, and also as trustee in 1881, cannot, under the views above expressed, be suffered to have them again. While this court may not have the power to open and reconsider an adjudication already made, still, where full commissions have been inadvertently awarded on a fund as received and paid out, when in truth it had been received and not paid out, it possesses the power, in a subsequent accounting, to take cognizance of the fact, and to decline to award half commissions again for paying out. It cannot compel a refunding in any other way, of any excess he may have received, nor deprive him of his right to them on the increase. All, therefore, that can be properly awarded here, in this regard, are commissions, at the rate of one per cent., on the amount of increase since the last accounting.

The contestant, however, objects that commissions should not be allowed on amounts received by the executor since he became of age, and entitled to the possession of the stock and other property. To sustain this objection, he refers to the case of Cowing v. Howard (46 *Barb.*, 579). The views embraced in the opinion were given with reference to the fact that the defendant was an involuntary trustee, stress being laid upon the further fact that he was not a voluntary trustee, as the executor is here. Although the result of the opinion was that an involuntary trustee was not entitled to commissions, yet the majority of the court held otherwise, and they were allowed. There can be no doubt that the executor should continue to discharge his duties until they are terminated by a final judicial settlement of his accounts. Take the

ordinary case of several general legacies which are payable at the end of one year, after which they draw interest. At the end of the year, the executor, having the fund invested, for some reason fails to have his accounting, but continues to collect and receive the interest on the securities in which the fund is so invested; when he does render his account voluntarily or by coercion, he will be entitled to commissions on the amount of increase that has accumulated since the legacies became due.

Items for money paid by the executor to counsel, as a retainer or otherwise, for services in this proceeding, must be disallowed. The only compensation he can be granted, as against the estate or fund, is such as the statute permits to be taxed as costs; and to those he is entitled.

I think the items for clerk hire, office rent, etc., objected to by the contestant, should also be allowed. Considering the magnitude of the fund, amounting now, owing to the prudent management of the executor, to about $1,500,000, and the necessity of accuracy in the accounts kept in relation to it, the expenditures seem to have been justifiable and for the benefit of the estate.

Costs are awarded to both parties out of the fund.

Decreed accordingly.