## WHITE *vs.* BULLOCK.

It is a matter within the jurisdiction of the surrogate on the final settlement of an estate, to find what each executor is debited and credited for; also what they have received and paid out jointly; in order that he may determine what each is liable for.

Where there are two executors of an estate, one active and the other inactive, the latter will not be held accountable for the acts of the former, if he has reason to believe that his co-executor is acting prudently, and according to law. The surrogate is therefore bound to inquire whether one or both are accountable.

And the decree made by him, upon such accounting is conclusive, between the executors, as to the amounts received and paid out by each, and cannot be contradicted by the sworn accounts of the executors, produced by them upon the accounting.

Commissions are to be divided between executors according to the services rendered by them respectively; and in the absence of any other proof in respect to such services, the share of each is to be determined by the amount of moneys stated in the surrogate's decree to have been received and paid out by the executors, respectively.

Justice requires that when an executor has done nothing, and has borne no responsibility, he shall not share in the commissions.

The act of 1849, (*Laws of* 1849, *ch.* 160,) is in accordance with this principle.

It *requires* the surrogate to apportion the commissions among the executors according to the services rendered by them, respectively.

APPEAL, by the plaintiff, from a judgment entered at a special term. The plaintiff and the defendant were the executors of John M. Mounsey, deceased. The plaintiff sued for one half of the commissions allowed by the surrogate on the final settlement of the accounts of the executors; he contending that he was entitled to one equal half of the commissions, and the defendant insisting that he had incurred no responsibility and rendered no services, except in a joint liability for $121, and so was entitled to commissions only on that sum. The plaintiff produced the decree of the surrogate, on the final accounting of the executors. That expressly declared that the executors were debited with $121, *the inventoried effects of the personal estate*, and that they were allowed $121 by payments towards *funeral expenses*. This sum was charged and credited to *both* executors. It also declared that the residue of the

moneys received, amounting to $10,233.59, except the above $121, were *received* by, and *debited to, Robert Bullock alone and not jointly* by him and Charles L. White, his co-executor. The items of that residue showed that the moneys were received by the defendant alone, for rents, and the proceeds of the sales of real estate since March 1, 1841, the date of the death of the testator, and from the estate of J. M. Todd, of whom Bullock was a surviving partner. The decree also declared that the payments made, except the $121, and which with the deduction of that sum, amounted to $4656.67 " were paid by and *are* credited to Robert Bullock alone, *and not jointly by him* and Charles L. White his co-executor ;" and then striking a balance it declared the total cash in hand to be $5807.78 which it declared to be in the hands of *Robert Bullock.* It afterwards, reciting that the amount in the hands of Robert Bullock, *one* of said executors, was $5807.78, ordered that *he* pay, out of this sum, various sums, covering, with the commissions, the whole $5807.78 in the hands of this defendant. The directions as to commissions were that he retain the commissions of said executors, being the sum of $202,33.

The plaintiff then offered in evidence a certified copy of the accounts, showing receipts and disbursements by White and Bullock as executors of Mounsey, and on which the surrogate's decree was founded, in order to show thereby what *each* executor received and what *each* paid out on account of the estate, and thus to show what commissions the plaintiff was entitled to. The judge rejected the evidence, and the defendant excepted. These accounts were sworn to by both executors; each swearing that they were just and true and contained a true account of all moneys received *by him* as executor. The accounts contained a number of schedules, and several of them were headed " schedules of moneys from, &c. by Robert Bullock and Charles L. White executors." These accounts were a part only of the evidence before the surrogate; for notwithstanding their production before him, he found precisely what each executor received, and what each paid out, and what each was

debited and credited for; and what the two together received and paid out and were debited and credited for.

The cause was tried at the New York circuit in June, 1854, before Justice MITCHELL and a jury, and a verdict was rendered in favor of the plaintiff for $3.03 damages; and in favor of the defendant, for the costs.

*A. Thompson,* for the appellant. I. The exclusion of the executors' sworn account by the judge as testimony was erroneous. It was competent evidence, and should have been admitted.

The surrogate's decree was not conclusive as between the executors. A surrogate's decree is only conclusive, on the final accounting, of the following facts, and no others. (2 *R. S.* 93, § 65. *Pres. Bank of Poughkeepsie* v. *Hasbrouck,* 2 *Seld.* 216, 221.) (1.) That the charges in the accounts for payment to creditors, legatees, next of kin and for necessary expenses are correct. (2.) That the executor or administrator has been charged with all the interest with which he is chargeable upon such moneys received by him as are embraced in his account. (3.) That the moneys stated in the account as collected were all the moneys collectable at the time of the settlement, on the debts stated in the account. (4.) That the allowance for decrease, and the charge for increase, in the value of any assets, made in the account were correctly made. (2 *R. S.* 93, § 65, statute 1847. *Pres. Bank of Poughkeepsie* v. *Hasbrouck,* 2 *Seld.* 216, 221.) (5.) The plaintiff, as executor, had no right to appeal from the surrogate's decree for not stating how the commissions due the executors should be divided between them. (6.) It is clear, then, that in this action, if the decree was not conclusive, the evidence offered by the plaintiff was improperly excluded on the trial.

II. The judge erroneously refused to charge that the plaintiff was entitled to one half of the commissions, $202.33, named in the surrogate's decree, with interest from May 5th, 1847. (1.) The commissions are called or denominated in the decree the commissions of the *executors,* which the defendant is per-

mitted by the decree to retain. (2.) The presumption cannot arise that the commissions belonged to one of the executors, when they are called the commissions of the executors—simply because in paying the money in his hands he is permitted to retain them. (3.) The burden of proof on the face of the decree lay upon the defendant, to show that he was entitled to the whole of the commissions. (4.) According to the law, the commissions belonged to the executors jointly and in equal proportions, and even the surrogate had no right to divide them. The surrogate *now* has the right. (2 *R. S.* 93, § 58, *amended by Laws N. Y.* 1849, *ch.* 160, § 1, *p.* 218, 219.) (5.) If the surrogate could have made a difference between the executors, he did not do it, and in such case the presumption of law would be that the commissions should be equally divided. (6.) The surrogate's court is a statutory jurisdiction, and has no common law or other powers, except those conferred by statute. (*Dakin* v. *Hudson*, 6 *Cowen*, 221. *Bloom* v. *Burdick*, 1 *Hill*, 180. *Corwin* v. *Merritt*, 3 *Barb.* 341. *People* v. *Barnes*, 12 *Wend.* 482. *Dakin* v. *Demming*, 6 *Paige*, 95.)

III. The judge's charge was erroneous in holding that the surrogate's decree not having passed on the amount of the commissions to both executors, the amount must be divided between them in proportion to the services rendered by each executor. (1.) This charge is clearly inconsistent with the decision that the sworn account of the executors could not be given in evidence, to show what services each executor rendered in the administration of the estate. (2.) It is clear the judge held the surrogate's decree conclusive, both as to the amount of the commissions and as to the services rendered by them respectively. This is erroneous. (2 *Selden*, 216, 221.) (3.) It is also perfectly evident that the decree did not intend to settle the rights between the executors. (4.) The decree cannot legitimately have any such effect given to it.

IV. The judge's charge was incorrect, in stating to the jury that the plaintiff, as co-executor, was not equally responsible with the defendant for all sums of money received by the defendant, for the estate. (2 *Wms. on Ex'rs*, 1119, 1120.)

V. The judge should, as requested, have charged the jury that an executor was always accountable for money received by his co-executor, if he aids or assents to it being received by the co-executor, or if it be in his *power to prevent him from receiving it.*

*J. N. Platt,* for the defendant. I. The great point in the case is, whether White, who did nothing over and above being engaged with Bullock in receiving and paying 121 dollars, is to receive one half of the commissions on what Bullock received and paid over, without having expended any labor thereon, or incurred any liability therefor, or received or paid over any part of it. The judge decided this point correctly when he charged "that amount must be divided between them in proportion to the services rendered by each executor." This charge was too much in favor of the plaintiff, because the surrogate, by his decree, had decreed that Mr. Bullock should retain these commissions. But laying this decree out of view, the judge was right in his law, and he is supported by the following cases: The statute (2 *R. S. p.* 93, § 58) provides for the executor's commissions—not for services or responsibilities, but for *moneys received and paid over,* whatever may be the equities or justice of the case, or the labors of the executors ; he or they receive nothing but for moneys passing through their hands. Let us examine the law on this subject. The revised statutes do not create the right to commissions, they merely put the law in a legislative form. *Laws of* 1817, *p.* 292, directed the chancellor to fix the rate. 3 *John. Ch. p.* 630, fixes the rate. 2 *R. S. p.* 9, § 58 adopts it. (*Grant* v. *Pride,* 1 *Dev. Eq.* 269. 2 *Barb. Ch. Rep.* 438. *Dayton's Surrogate, p.* 227.)

II. With the exception of the 121 dollars, all the business was done by, and all the moneys were received and paid over by the defendant. The decree says all the assets are chargeable to R. Bullock, and are $10,233.59. All payments were made by him, and are $4,777.67, leaving him chargeable with $5,807.78, out

of which he is directed *to retain* the executor's commissions, and pay various creditors, including himself.

III. The judge was correct in ruling out the petition. The decree, which was final, adjudicated the rights of the parties, and the object of introducing the petition is to contradict the decree, and therefore clearly inadmissible. But on examination the petition does not contradict the decree, and is entirely consistent with it. It is a joint accounting, but neither meant to charge the other with more than he or she had received.

IV. The judge's charge is correct, and is too broadly in favor of plaintiff, as the plaintiff was only entitled to commissions on moneys which had passed through his hands; he was entitled to nothing for personal or other services.

V. The exception at folio 150, to that part of the charge in which the judge stated that the plaintiff was not equally responsible with the defendant, for all sums of money received by the latter for the estate, merely from his being a co-executor, is bad, as by the case of *Bogert* v. *Hertell*, (4 *Hill*, 492,) and is irrelevant to the issue.

VI. The exception at folio 151, to the refusal to charge that an executor is always accountable for moneys received by his co-executor, if he aids or assents to its being received by him, or it is in his power to prevent his co-executor receiving it, was manifestly too broad, and it is immaterial to the case and facts.

*By the Court*, MITCHELL P. J. The finding as to the receipts and payments of the executors was a matter within the jurisdiction of the surrogate on the final settlement of the accounts; for he was to determine how much *each* executor was liable for. If one executor had received all the moneys and made all the payments, and the other had every reason to believe that the active executor was doing all this prudently and according to law, the inactive one would not be accountable for the moneys thus received by his co-executor. The surrogate was therefore bound to ascertain how these facts were, before he could decide whether his decree should be that Bullock

alone should be accountable for the balance which was found in his hands, and should pay the same, or that he and White were both accountable for it, and should pay it. He did pass on the question, and declared that White was accountable with his co-executor for the $121 alone, and that no debt was discharged by the payment of funeral expenses, and that the rest of the moneys were "*received by* and debited to R. Bullock alone, and not jointly by him and C. L. White, his co-executor." The negation "not jointly by him and C. L. White his co-executor," was added to prevent any doubt as to the extent of the acts of each, and of the liability of each. The decree in conformity with this makes Bullock alone liable for the money thus received. The plaintiff receives the benefit of this decree—is exonerated from liability to the creditors for any part of the moneys thus charged to Bullock, and which may still be a valuable immunity to him (if, as intimated, Bullock has failed to pay all the creditors) and acquiesced in the decree, and *founds this very claim upon it,* and still seeks to disprove the most important parts of it. This is as unjust as it is contrary to legal principle. If the decree is not conclusive between these parties as to the amounts received and paid by each; then the defendant may turn around and sue the plaintiff for half of the $5807.78 with which he is charged, and produce these verified accounts, according to his views, as an admission by White that he had received half of the money. But the accounts, if admissible as evidence, would not establish the facts for which they were offered. The two executors were together to render accounts of all moneys received by both or either of them. In making out the accounts, no question being *then* raised as to the extent of the separate or joint liability of each executor, the accountant might well entitle them schedules of moneys received by Robert Bullock and C. L. White, executors ; for then the *main* thing was to show what moneys were received for the *estate* and paid out for the estate, and not how far each executor was liable, and he would regard the executors and the estate as synonymous. Each executor would also swear that the schedules contained a true account of all moneys paid and

received by him, and so far only did he verify it. If they contained all that he received and all that he paid out, although they contained much that he never received but which his co-executor received, and much that he never paid out, but which his co-executor paid out, his affidavit was true that they were a true account of all moneys paid and received by him. He did not swear that the accounts were true as to the persons by whom they were received. The schedules contain the items of the moneys received and paid out by Bullock as surviving partner of Mounsey & Co., and entitle those as " rec'd by R. Bullock, surviving partner," and do not there mention White. The reason of this is that the *executors* would be accountable for the net balance only to which Mounsey's estate was entitled as his share in the partnership property, after paying all debts, and therefore in the accounts containing the items from which that net balance was derived it was stated as received by R. Bullock as surviving partner, and not by him and White as executors.

The plaintiff's counsel then requested the judge to charge the jury that the plaintiff was entitled to one half of the commissions; and that the parties could not go back of the surrogate's decree, to ascertain the services rendered by each. The judge refused. If the latter part of this proposition was correct, then the plaintiff had no right to prove the accounts verified by the executors, for in that he would go back of the decree. Next he requested the judge to charge that if any difference should have been made in the commissions to be received by the executors, such difference could have been made in the decree only. The judge charged, (1st) that the commissions were to be divided between the executors according to the services rendered by them; and that without other proof of those services it was to be determined by the amount stated in the decree to have been received and paid by them respectively; (2d.) That if it had been proved that the plaintiff had rendered services in aid of the receipt and payment of the $5807.78 received by Bullock, or had become jointly liable with him for that amount, or for part of it, he would have been entitled to a fair compensation for that service; (3d.) That the

plaintiff was not responsible with the defendant for all moneys received by the defendant for the estate, merely from being a co-executor ; and (4th.) That there was no proof that he had done any act to make himself responsible, except as to the $121, and that the surrogate did not hold him responsible except as to that sum. The judge refused to charge, (5th.) That an executor is always accountable for money received by his co-executor if he aids or assents to its being received by his co-executor, or it is in his power to prevent the executor receiving it ; declaring the proposition too broad.

The last proposition is evidently too broad; for it would make an executor liable, in case he had it in his power to prevent the executor receiving money, if he did not prevent it, although he should have no reason to believe that the executor was not acting in good faith in receiving it, and would not faithfully keep it for the estate. Besides, there were no facts to raise the question. The objection to the 3d branch of the judge's charge was also too broad, and like the last. The 2d branch was favorable to the defendant, if there had been any facts to sustain it. The 4th branch was a statement as to the proofs, and was true.

The authority quoted by the plaintiff (if any were needed) shows that if an executor is merely passive he is not responsible for the acts of his co-executor, and that he cannot be made chargeable for a *devastavit* of his co-executor, unless he in some way contribute to it. (2 *Wms. on Executors*, 1530.) Justice would require that when he has done nothing, and has borne no responsibility, he should not share in the commissions. The act of 1849, ch. 160, is in accordance with this principle. It *requires* the surrogate to apportion the commissions among the executors according to the services rendered by them respectively. It did not introduce a new principle, but gave to the surrogate an express power and obligation to apportion the commissions, because before that, no such *express* power was possessed by *that officer*, and possibly no such implied power. In *Valentine* v. *Valentine*, (2 *Barb. Ch.* 438,) the chancellor said "the whole commissions should be apportioned among all the

executors, either equally or upon some equitable principle in reference to their respective services *in* the administration of the estate." Did he not mean equally, when their services or liabilities were equal, or nearly so, or upon some other principle—in both cases having reference to their respective services? This would best comport with the views of an equity judge. The apportionment is not determined as in case of partnership, by positive agreement as to the shares of each, but by rules of equity. Those rules would never favor the one who neglected the estate, and give him a bounty out of the compensation earned by the other.

The judgment is affirmed, with costs to the defendant.

[NEW YORK GENERAL TERM, May 7, 1855. *Mitchell, Clerke* and *Cowles,* Justices.]