WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—October, 1885.

BACON *v.* BACON.

*In the matter of the judicial settlement of the account of* CHARLES A. BACON, *and others, executors of, and trustees under the will of* DANIEL P. BACON, *deceased.*

The description, by a will, as "trustees," of persons thereby nominated to execute its provisions, does not constitute them such, unless trusts are

created for them to perform; while, on the other hand, where the instrument creates such trusts, its failure so to describe such nominees will not deprive them of that character.

A provision, in a will, for *qualification* by persons therein designated "executors and trustees," negatives the inference of an intention to constitute a trust, in the technical sense of that word.

Where executors have completed the performance of their duties as such, and are about to enter upon the discharge of functions imposed upon them as trustees under the will, their account should be fully and finally closed, and a sum, fixed and certain, set apart for them to hold in their new capacity, free from all charges.

Testator, who died in 1879, by his will, which nominated his wife executrix, and three other persons executors thereof, after bequeathing certain general legacies, which were made payable as soon as convenient after his decease, gave the residue to the executors, other than the wife, in trust for the benefit of the latter for life, with power to sell the real property—remainder over. This was the only provision for the widow, and was expressed to be in lieu of dower, thus entitling her to the income from the death of testator. It was further provided that, in case any of the trustees named died, resigned, or omitted to qualify and act, the other or others should select successors or substitutes, who were to have like powers, *upon qualifying.* In 1882, a decree was entered settling the executors' account, allowing them full commissions on the *corpus* of the fund, and, though not discharging the executors, directing them to pay over, to such of their number as were named trustees in the will, the residue of the estate, to be administered in accordance with the provisions of that instrument. The will, however, contained no such direction. The widow having died in February, 1885, the surviving executors again submitted their account for settlement and asked to be again allowed full commissions, as trustees, upon the principal fund.—

*Held*, that the will created no separate trust, the terms, "executors" and "trustees," being therein employed, except as regarded the widow, interchangeably and as synonymous; that the effect of the decree of 1882 was merely to carry out the intention of the testator to place the residue in the hands of the executors other than the widow; and that the commissions asked for should not be allowed.

Johnson v. Lawrence, 95 *N. Y.*, 154—followed; McKie v. Clark, 3 *Dem.*, 380—approved.

THE testator, Daniel P. Bacon, died in December, 1879, leaving a will, whereby he disposed of an estate amounting to about $250,000, of which about $225,000 consisted of Government bonds, bonds and mortgages and stocks. After giving legacies to his

children and grandchildren, amounting to about $63,000, payable as soon after his decease as might be, he gave all the residue of his estate to his executors, other than his wife (who was afterwards named as executrix), in trust, for the .benefit of his wife for life, with remainder over. This provision for his wife was in lieu of dower. He also authorized his executors or trustees to sell his real estate. He also provided that, in case either of the trustees named should omit to qualify and act under the will, or die or resign, the remaining trustees or trustee were to appoint a successor or successors; and gave to such successor or successors the same power to appoint successors or substitutes, conferring upon each successor or substitute the same power that the original trustees possessed under the will, on their qualifying and taking upon themselves the execution of the powers and duties conferred and imposed by the will.

In March, 1882, an account was filed by the executrix and the executors named in the will, by which it appeared that they had paid general legacies and interest thereon, amounting to about $64,500— of which about $52,000 was paid in 1880, and the balance in 1881, previously to May 12th, and that they had paid the widow, on account of income, about $27,000; that they commenced making such payments to the widow within a few days after the testator's death, and continued to make them nearly every month, down to a month or two before filing the account. The executrix, as well as the executors, signed all of the schedules showing these payments, and all the other schedules. A decree was entered in

that proceeding, fixing the amount of the balance in the hands of the executors at $169,775.06, which included $100.25 of income. The sum allowed them for commissions was $8,582.43, of which $919.79 was to be deducted from the income. It was also adjudged that they had overpaid to the widow $819.54, which sum it was directed that she should repay to the executors, or that the same be deducted from her future income. The costs and expenses of the proceeding, fixed at $274.14, were directed to be paid out of the principal of the estate, and the executors were directed to pay over and deliver to the persons named as trustees, all the remainder of the estate, to be administered by them according to the provisions of the will. There was no provision discharging the executors, as such. The widow died in February, 1885. Some of the real estate remained unsold. The funds of the estate chiefly remained invested in the same securities held by the testator in his lifetime. No separate account was opened by the executors as trustees, and items which were now charged in the present account were received by them before the entry of the decree, in 1882.

There were some minor facts which sufficiently appear in the opinion.

MARSH, WILSON & WALLACE, *for executors and trustees.*

JOHN H. PECK, *for J. B. Bacon, legatee.*

THE SURROGATE.—While there are diverse and apparently conflicting elements that enter into and somewhat embarrass the consideration of the most

important question involved, yet the difficulty disappears when the facts are properly weighed, and well established rules applied. The executrix and executors having had commissions in full, on the accounting in May, 1882, the surviving executors now, as trustees, claim full commissions again on the same fund. This is objected to by the contestant, and his objection seems, under the adjudged cases, to be well taken. The designation of persons named to execute a will as " trustees " does not constitute them such, unless the will creates trusts for them to execute ; nor does the failure to so designate them deprive them of that character, where the will does create such trusts.

In order to ascertain the intention of the testator, we must take into consideration the whole will and all its parts. While some expressions used in the will in question seem to indicate that it was the intention to make the executors trustees of the residuary estate, they appear to be overborne by others which imply a different intent. For instance, he appoints his wife executrix, and three gentlemen executors, and, after giving some general legacies, he gives to his executors thereinafter named, other than his wife, all the rest, residue and remainder of his estate, to have and to hold the same in trust for the benefit of his wife for life. Standing alone, this would seem to create what the courts call a trust. But when we proceed further, and discover that it is the only provision made for the wife, and was in lieu of dower, and find that her right to her legacy accrued and commenced at the death of her

husband; that the general legacies were payable as soon after the death of the testator as was convenient; that the will provided for the appointment of successors to the persons named as trustees, and substitutes for such successors, and required them to "qualify," which, of course, means to take the usual oath of office, we are led to the belief that it was not intended to create a trust, but that the words executors and trustees were used interchangeably and as synonymous, except as to the executrix, whose powers were limited to duties which were exclusive of those affecting the provisions made for her personally.

In the case of Johnson v. Lawrence (95 *N. Y.*, 154), the court, after reviewing the various cases on the subject, deduces and establishes this general rule : " Taking the adjudged cases together, they appear to establish that, to entitle the same persons to commissions as executors and as trustees, the will must provide, either by express terms or by fair intendment, for the separation of the two functions and duties, *one duty to precede the other and to be performed before the latter is begun.*" Now, where shall we look for the period or point of separation of the two alleged duties in this case ? In truth, they are interwoven and co-existent. The account filed in 1882 discloses the fact. In that account were mingled debts and legacies paid, and income to the amount of about $27,000 paid to the widow, thus embracing executorial acts and those claimed to have been performed as trustees, in the same account. The funds of the estate were of such magnitude, and of such a nature, that the executors could have set aside suffi-

cient to meet the legacies, and thus ascertain quite accurately the amount of the residuum. This, perhaps, was done, and thus the duties of the executors, including the widow, and of the executors, excluding her, seem to have been discharged *pari passu*, and yet no such actual separation appears to have been made. The effect of this is to establish the fact that the testator did not intend to create two separate and distinct duties, " one duty to precede the other and to be performed before the latter is begun."

Then, again, the testator makes provision for the appointment of *successors* to those designated as trustees. This shows that he did not contemplate a trust that would attach to the persons of the executors rather than to the office,—a circumstance upon which much stress was laid, and the decision mainly hinged, in the case of Hall v. Hall (78 *N. Y.*, 535). Besides, there was a provision that such successors or substitutes for successors should " qualify." Executors qualify; trustees do not. Nor were the executrix and executors directed, by the will, to pay over to the executors named as trustees, the residuary estate (Valentine v. Valentine, 2 *Barb. Ch.*, 430). There was no actual investment of the alleged trust fund, as such, but it was invested from the beginning, and the securities representing it were embraced in the account rendered by them as executors, and in the account now rendered. Taking these facts together, and applying the principles settled by the authorities cited, it must be held that the accountants are executors only, and not trustees.

It seems, however, that there is another element in

the case to be considered. By the decree of May, 1882, the executors were directed to pay over to the executors who are named in the will trustees, all the remainder of the estate, to be received by them and administered in accordance with the terms and provisions of the will. There was no provision discharging the executors. The will contained no direction to the executors to pay over to the alleged trustees; and as the testator used the words executors and trustees interchangeably, the effect of the decree is only to carry out the intention of the testator to place the *residuum* in the hands of the executors other than his wife. The views of Surrogate ROLLINS on this point, as expressed in McKie v. Clark (3·*Dem.*, 380), seem to be sound.

It may not be out of place to state that the decree was entered without opposition, and without having the attention of the court directed specially to the subject. By that decree, it appears that a balance of upwards of $169,000 was found to be in the executors' hands; they were allowed commissions to the amount of about $8,580, and about $275, costs. In the present account, the executors begin by charging themselves with the above $169,000, then with items of money received by them before the filing of the first account; and, among other things, they credit themselves with the commissions and the payment of the costs—thus running the two accounts into each other. This is not, perhaps, very objectionable on the theory that both accounts are rendered as executors, but decidedly so, on the theory that they are trustees. If their duties as executors were then to

cease, and those of trustees to begin, their accounts should have been fully and finally closed, and a sum, fixed and certain, should have been set apart, which they were to hold in their new capacity, free from all charges.

It results from these views that, while the executors have had full commissions on the *corpus* of the fund once, they have no right to them, or any part of them again.   It has been heretofore held (Hawley v. Singer, 3 *Dem.*, 589) that this court has the power, in this mode, of correcting an error in this respect, inadvertently made ; but they would be entitled to commissions on the increase since the last accounting, and paid to the widow, as directed by the will, had they any balance of income due to her, from which they could be taken.   If they chose, they could, at the time of each payment made to her, have reserved their commissions thereout.   Whatever balance is on hand, which belonged to her, may be applied in that way.

Some real estate in Troy, which was bought in by the executors under foreclosure proceedings, has been since sold by them for $15,000, a small part of which has been paid, and the residue is secured by bond and mortgage.   This mortgage must be regarded as an investment made by them, of money on hand, and they should, if they have not heretofore received them, be allowed half commissions for receiving. Commissions on income received since the death of the widow, at the proper rate, must be allowed.   The executors are obliged to do their duty in collecting it down to the time of the accounting and decree (Haw-

ley v. Singer, *supra*).  Some choses in action, for rents and produce sold, are outstanding and uncollected; when they shall be paid, they will enter into any subsequent accounting which may be rendered.

I have thus endeavored to dispose of all the questions raised.  Should anything have been omitted, it can be determined at the time of settling the decree. Costs to be adjusted, are allowed to both parties out of the fund.