## MARY C. EVERSON, appellant,

*v.*

## HENRY C. PITNEY, surviving executor &c., respondent.

A testator provided that his executors and the survivor of them and the heirs of the survivor should hold his estate during the life of his widow in trust for her use, and should invest it and pay the taxes and other necessary outlays thereon, and then pay her the net income, and, if necessary, pay her part of the principal, in their discretion, for her comfortable support, with power, with her consent, to sell any of his lands, and, after her death, to sell all of his lands, and, after paying certain legacies and the expenses of settling his estate, to divide the residue between his daughter and his son. He died in 1872. Both executors proved the will, executed its provisions, and filed their accounts in 1875. One executor died soon thereafter, and the other performed all the duties imposed by the will. The widow died in 1884.—*Held*, that the trust devolved upon the executors, as such, and that, as they had received full commissions on the principal in their hands on the settlement of their account as executors, in 1875, the survivor was not entitled to commissions thereon again as trustee, on the settlement of his account in 1884, after the widow's death, as surviving trustee. He was allowed commissions on the increase of the *corpus*.

Appeal from decree of Morris orphans court.

*Mr. R. L. Lawrence*, for appellant.

*Mr. A. Mills*, for respondent.

THE ORDINARY.

Austin Requa, late of Morristown, deceased, by his will, dated April 17th, 1868, after providing that his debts and funeral expenses be paid, gave to his wife all his movable property in his house and on the premises on which he lived, except securities for money. He then gave several general pecuniary legacies, viz., to his daughter, Mary C. Everson, $1,000 ; to his brother Leonard, $500, both payable in one year after his death ; to his two nieces, Fanny and Hannah Requa, $300 each, payable after

his wife's death, and to Austin R. Hannah, $500, payable when he should have attained to majority. He then gave, devised and bequeathed to his executors, thereinafter named, and to the survivor and survivors of them, and to the heirs of the survivor, all the residue of his estate, in trust; first, as to his real estate, to take the rents, issues and profits thereof, and after paying the taxes and assessments and for repairs, to pay the balance of the rents, issues and profits to his wife for life, and he authorized them to permit her to use and occupy any part of his real estate. He also authorized and empowered the executors, at their discretion and with her consent, to sell the whole or any part of his real property, the proceeds of the sale to be added to and become part of his personal estate. Second, to invest the personal estate and keep it invested, and pay the net annual income to his wife. He gave his executors power, at their discretion, to pay to her out of the *corpus* of his personal estate such sum, not to exceed $500 a year, as would be sufficient to enable her to live in the homestead as comfortably as before his death, if the income should prove insufficient for the purpose. He directed that, at his wife's death, they should dispose of all of his real estate, and directed that out of the body of his estate they should pay $6,000 to such person or persons as his wife, by testamentary disposition, might direct or appoint. He then gave a specific legacy and several general ones after his wife's death, and directed his executors, after the payment of the legacies and all the expenses of settling his estate, to divide the residue of his estate into two equal shares, and pay one of them to his daughter and the other to his adopted son. By a codicil, dated July 29th, 1870, he provided for the payment of $2,000 to a person therein named, provided such person should remain with him and his wife until the death of the survivor of them, and for compensation to that person at a fixed rate for the time during which she should remain, if she should not remain until the death of the survivor. He also, by that codicil, gave his wife a legacy of $1,000. By another codicil, dated April 5th, 1872, he increased that legacy to $3,000, and provided that the pecuniary legacies to Mary C. Everson, Leonard Requa and Austin R. Hannah

should not be payable until after his wife's decease, and declared that it was his intention that she should have the income from and the use of his whole estate during her life.   He died in the fall of 1872.   His wife survived him.

The will and codicils were proved by the executors, Henry C. Pitney and Nathaniel Fisher.   They paid the debts and sold the real estate, and settled their accounts in the Morris orphans court in January term, 1875.   The amount of the trust fund as ascertained by that settlement was $36,622.21.   It was all invested upon bond and mortgage (eight different investments) except $250 in gas stock.   Shortly after that settlement Mr. Fisher, one of the executors, died.   Mr. Pitney, the other executor, has managed the trust since Mr. Fisher's death.   The widow died in 1884.   The trust in her favor continued for nearly ten years after the settlement of 1875.   In November, 1884, Mr. Pitney filed his account as surviving trustee.   The testator's daughter, Mary C. Everson, the appellant, excepted to it.   The exceptions were all disallowed.   Among them was one objecting to the allowance of commissions on the trust fund of $36,684.08.   That sum is the amount of the fund as it stood at the settlement of the account of 1875, with $61.87 added for the increase of principal realized on the purchase and sale of government bonds belonging to the trust.   The objection was based on the proposition that the executors held the trust fund as executors, and that they having, in 1875, received commissions upon it, the survivor was not entitled thereto a second time.   From the decree of the orphans court, so far as that objection was concerned, the exceptant appealed.   It appeared by the evidence in the orphans court that all of the investments except one, in which the funds stood invested at the passing of the account of 1875, were paid off, and that the money was re-invested by Mr. Pitney ; that those payments were, in every case but one or two, voluntary, and in those foreclosure was necessary, because interest was not paid.   Seventeen new investments were made by Mr. Pitney, and six of them were called in and collected for the purpose of settling the estate. The executor was compelled to make the investments for short periods only because of the necessity of calling in the money for

the payment of legacies &c. at the death of the widow. At times, principal remained in Mr. Pitney's hands for a considerable period of time, for want of proper opportunity for investment. None of the principal has ever been lost.

When the account of 1875 was passed, there remained, as before stated, in the hands of the executors, $36,622.21, all of which was invested. That money was thenceforth until the death of the widow to be held as a trust fund for her benefit. The testator clearly intended that she should have the benefit of the whole of the income. He even gave the executors power at their discretion, under certain circumstances, to trench upon the principal if necessary for her comfortable support in the way in which he and she had lived together. By the second codicil he postponed the payment of the legacies to his daughter, his brother Leonard, and Austin R. Hannah until after her death, adding that it was his will and he did thereby declare that she should have the income from and use of his whole estate during her life. By that codicil he increased the legacy of $1,000 given to her by the first codicil, to $3,000. It is manifest that he intended that she should have the full benefit of all the income of his estate.

The trust was devolved upon the executors as such. It was the testator's intention that his executors should pay his debts and funeral expenses, and pay his wife $3,000, and then hold the residue of his property for the benefit of his wife so long as she should live, and that they should, after her death, pay $6,000 according to her testamentary direction, and pay the legacies, and after payment of the legacies and all the expenses of settling the estate, divide the residue between his daughter and adopted son &c.

The duties of the executorship would not end until the payment of the legacies &c. and the division just mentioned, and those things were not to be done until after the death of the widow. In order to hold that the trust was separate from the executorship, it would be necessary to hold that the latter was suspended after payment of the debts and funeral expenses and the $3,000 to the widow, until after her death, when its duties would be resumed in the payment of the $6,000 and the legacies and the expenses of settling the estate and in making the divi-

·sion of the residue; and that, in the meantime, the executors would act as trustees. In this case, there is no separation of any sum or property from the body of the estate, in order that it may be held in trust for a purpose unconnected with the settlement of the estate, but the executors, as such, are to hold the body of the estate in trust up to the time of the death of the widow, and then are to proceed to pay the legacies &c. The trust is inseparable from the executorship. Under such circumstances, double commissions cannot be allowed. In *Valentine* v. *Valentine, 2 Barb. Ch. 430,* where a testator, by his will, after giving general legacies, directed that the residue of his estate should be divided between his three sons, and as to the share of one of them, who was a lunatic, directed the executors to invest it at interest upon good security, and apply the income thereof to the support of that son for life, and after his decease pay the principal to his children, and the will also provided that if the son should be restored to reason, so as to be capable of managing his own affairs, the share should be paid over to him, it was held that the funds in the hands of the executors for the benefit of the lunatic and his children were held by them in their character of executors, and that the trust and the executorship were inseparable, and that the executor was not entitled to double commissions, first as executor and then as trustee. In *Westerfield* v. *Westerfield, 1 Bradf. 198,* where the testatrix set apart by her will a certain fund, then at interest on mortgage, to be held and disposed of by her executor upon certain trusts, the court said that the testatrix had directed her executor to hold that fund in trust, and had not, therefore, divorced the trust from the executorship, but, on the contrary, attached the trust to the executorship, so that one accompanied the other, the trust belonging to the office of executor. Double commissions were, therefore, denied. So, also, in *Lansing* v. *Lansing, 45 Barb. 182;* *Drake* v. *Price, 5 N. Y. 430;* *Hall* v. *Hall, 78 N. Y. 535,* and *Johnson* v. *Lawrence, 95 N. Y. 154.* In the last-mentioned case, the court said that taking the adjudged cases together, they appear to establish that, to entitle the same persons to commissions as executors and as trustees, the will must provide, either

by express terms or by fair intendment, for the separation of the·
two functions and duties, one duty to precede the other and to
be performed before the latter is begun, or substantially so
performed; and must not provide for the co-existence continu-
ously and from the beginning of the two functions and duties;
and that where the will does so provide for the separate and
successive duties, that of trustee must be actually entered upon
and its performance begun, either by a real severance of the
trust fund from the general assets, or a judicial decree which
wholly discharges the executor and leaves him wholly acting and
liable only as trustee. Also, that where, by the terms or true
construction of the will, the two functions, with their correspond-·
ing duties, co-exist and run from the death of the testator to the
final discharge, interwoven, inseparable and blended together, so
that no point of time is fixed or contemplated in the testa-
mentary intention at which one function should end and the
other begin, double commissions or compensation in both
capacities cannot be allowed. In that case double commissions
were denied. The testator, by the will, directed his executors,
their survivors or successors, to carry on his business with his·
estate and property during the life of his wife and daughter,
and upon their death the business was to be closed and the estate
divided. Part of the estate was real property, and power of sale
was given to the executors. In the case now under decision, the·
executors, by the will, were, in the first instance, to administer
the estate so far as the payment of the debts and funeral
expenses and the legacy of $3,000 to the widow were concerned.
They were then to manage the residue of the estate for the·
benefit of the widow for her life, and at her death they were to
complete the administration by paying the $6,000, according to
her testamentary appointment, and paying the remaining legacies
and dividing the residue of the estate. All these things, from
the beginning to the end, including the management of the
estate for the benefit of the widow, constitute the administration
of the estate, and are but the discharge of duties and functions·
devolved upon the executors, as such, by the will. The trust
was part and parcel of the administration. The executors,.

having received full commissions upon the *corpus* of the estate in the account of 1875, the respondent is not entitled to commissions again upon it as trustee.   He is entitled to receive commissions as executor upon the increase of the fund.   The commissions should, under the circumstances, be paid out of the estate.   I am satisfied that the testator intended that his widow should not be charged with commissions upon her income, but that they should be paid out of the *corpus* of the estate.

The decree will be reversed, so far as the award of commissions is concerned, and a decree entered, granting commissions according to the views above expressed.   The costs of the appeal and a counsel fee of $100 to each side will be paid out of the estate.